### Adeline Allen, Appellee, v. Chicago Great Western Railroad Company, Appellant.

#### Gen. No. 29,917.

CONTINUANCE—*recognition of injunction issued by court of sister state restraining prosecution of action in courts of this state.* Where an action for damages for personal injuries due to the negligence of the defendant railroad company was commenced in the courts of a sister state, wherein the alleged negligence and resultant injury occurred, and thereafter and while such action was pending in the courts of that state, the same plaintiff instituted a like action upon the identical cause of action and against the same defendant in the superior court of Cook county, it was an abuse of the discretion lodged in the judge of the superior court to deny defendant's

motion therein to continue the cause pending the determination by the court in which the former action was pending of an injunction issued out of said court restraining the plaintiff and her attorney from prosecuting the action in the superior court.

Appeal by defendant from the Superior Court of Cook county; the Hon. Joseph B. David, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1924. Reversed and remanded. Opinion filed December 2, 1925. Rehearing denied December 18, 1925.

Winston, Strawn & Shaw, for appellant; Ralph M. Shaw, Walter H. Jacobs and Charles J. McFadden, of counsel.

W. W. McCallum and John A. Bloomingston, for appellee.

Mr. Justice Taylor delivered the opinion of the court.

As we view the record in this case, the decisive question is whether the plaintiff, Adeline Allen, a resident and citizen of Waterloo, Iowa, who began suit on December 23, 1921, in the district court of Blackhawk county, Iowa, for damages for personal injuries alleged to have been received at Waterloo, Iowa, on November 16, 1921, as the result of being run into by a train belonging to the defendant, the Chicago Great Western Railroad Company, was entitled, later, on March 2, 1923, while the above-mentioned suit in Iowa was pending and at issue, to begin suit in the superior court of Cook county, Illinois, on the same cause of action and prosecute it to judgment, notwithstanding, meanwhile and before the trial in the superior court which led to judgment, an injunction had been issued by the district court of Blackhawk county, Iowa, and served on the plaintiff and her attorney, restraining them from taking any further steps in the prosecution of the suit in the superior court of Cook county.

The matters involved in the question referred to

arise as the result of a motion made by the defendant in this cause in the superior court to continue the case until the injunction, issued by the district court of Waterloo, Iowa, restraining the plaintiff from prosecuting it, be quashed, dismissed or modified. That motion was supported by an affidavit made by C. J. McFadden, one of the attorneys for the defendant.

The affidavit contained, in substance, the following representations: That the plaintiff, Adeline Allen, a resident of Waterloo, Iowa, on December 23, 1921, through her attorneys Edwards, Longley, Ransier and Harris, began suit in the district court of Blackhawk county, Iowa, against the Chicago Great Western Railroad Company, for $2,900 as damages for alleged personal injuries sustained by her through the alleged negligence of the defendant on November 16, 1921, at its Franklin street crossing in Waterloo, Iowa; that a summons was duly served, and on January 9, 1922, the defendant filed its answer, and the suit became and then was at issue and has so remained continuously and is still pending in that court, although nine terms of said court have passed since it was begun, at any of which it might have been tried; that on February 26, 1923, W. W. McCallum, a Chicago attorney, served notice on the defendant that the plaintiff had placed in his hands a claim for damages alleged to have been received by her at Waterloo, and advised the defendant that he had a contract with her by which she was to pay him for services one-third of any amount recovered; that, thereafter, on March 2, 1923, the plaintiff, by her attorney, McCallum, began suit in the superior court of Cook county for $40,000 against the defendant and on March 23, 1923, filed, through McCallum, a declaration based upon identically the same cause of action set up in the suit then and still pending between the same parties in the district court of Blackhawk county, Iowa; that on March 21, 1923, the defendant filed in the superior court a

general and special demurrer to the declaration, which were later confessed by the plaintiff; that the plaintiff then filed on April 26, 1923, leave having been obtained, an amended declaration, to which on May 1, 1923, the defendant filed a general and special demurrer, which has not been passed upon, but is still pending; that on July 30, 1923, in the district court of Blackhawk county, at Waterloo, Iowa, the defendant filed its petition for an injunction praying that an order be entered and a writ of injunction issue, restraining the said Adeline Allen and her attorney, W. W. McCallum, from doing any act or thing in furtherance of the prosecution or trial of the suit then and there pending in the superior court of Cook county, Illinois, and on July 30, 1923, a temporary injunction order was entered by the district court of Blackhawk county, Waterloo, Iowa, restraining the said Adeline Allen, her attorney, W. W. McCallum, their agents and attorneys, from prosecuting her suit in the superior court of Cook county, Illinois, case No. 387098, in conformity with the prayer of said petition; that thereafter, on July 30, 1923, a certain writ of injunction was issued in said case directed to the said Adeline Allen and the said W. W. McCallum, her attorney, restraining them, or either of them, from taking any steps with relation to the transaction of said case pending in the superior court of Cook county, and said writ of injunction was on July 30, 1923, served upon the said Adeline Allen by delivering a true copy thereof to her in the City of Waterloo, County of Blackhawk and State of Iowa, as appears from the exemplified copy of said injunction order and injunction writ and return thereto attached, filed in the superior court of Cook county on November 12, 1923; that said writ was served on McCallum on August 8, 1923, in the City of Chicago.

That, although John A. Bloomingston and A. G. Reid, attorneys, on October 1, 1923, filed an answer to the injunction proceedings in the district court, on

behalf of Adeline Allen and W. W. McCallum, the injunction is still unmodified, and in full force and effect; that the defendant has been at all times ready and willing to try out the issues involved in the injunction suit; that on October 31, 1923, in violation of the injunction, a motion was made (for the plaintiff) in the superior court, supported by affidavit, to advance the cause in that court, but no action was taken thereon; that on November 23, 1923, the plaintiff filed three additional counts to her amended declaration, and on November 24, 1923, the defendant filed a general and special demurrer thereto; that no action has been taken thereon; that the suit of the plaintiff against the defendant, pending in the district court of Blackhawk county, Iowa, is based upon the identical alleged injuries and cause of action upon which this suit in the superior court is based; that in the suit for damages in the district court, the plaintiff is represented by Edwards, Langley, Ransier and Harris; that the defendant, although denying liability, has offered to compromise and settle the suit in the district court by paying $250; that her attorneys, above mentioned, recommended and urged the plaintiff to accept the offer; that, although the accident is alleged to have occurred in Waterloo, Iowa, where practically all the witnesses reside and where she resides and has her home, she is urging and insisting, despite the injunction of the district court is in effect and outstanding, that the defendant be compelled to transport from Waterloo, Iowa, to Chicago, approximately fifteen to eighteen witnesses—at large expense—a majority of whom are employees of the defendant railroad, engaged in interstate commerce; that their absence would seriously impair the defendant's interstate transportation service and cause disadvantage, pecuniary loss and irreparable injury to the defendant in carrying out its duties to the public as a common carrier; that the institution of the suit in the superior

court, while there was a suit for the identical cause of action at Waterloo, Iowa, is unwarranted, and constitutes vexatious litigation.

That the alleged accident and injuries were not caused by any fault or negligence of the defendant; that Waterloo, Iowa, the *locus in quo*, is approximately 272 miles west of Chicago, Illinois, and if the case has to be tried in Chicago and the defendant obliged to transport its witnesses, it will also be obliged to maintain them in Chicago at great expense; that by reason of the facts recited, the cause of action in the superior court should be continued until the injunction proceedings in the district court of Iowa are quashed, dismissed or modified, and the defendant's general and special demurrer in the superior court are disposed of. No answer appears to have been made to the defendant's affidavit.

On February 15, 1924, the motion in the superior court for a continuance was denied, and the cause ordered for trial on February 18, 1924. To that order, the defendant excepted.

The record before us contains an interlocutory bill of exceptions which was signed and sealed by the trial judge, and filed on March 25, 1924.

The record, also, contains a bill of exceptions dated August 25, 1924, showing that on February 18, 1924, a trial was had in the superior court; that there was a verdict for the plaintiff in the sum of $25,000; that there were motions for a new trial and arrest of judgment, which were overruled; that judgment for the amount of the verdict was entered, and an appeal taken by the defendant.

Did the trial judge err in denying the motion of defendant to continue the case until the injunction issued by the district court of Blackhawk county, Iowa, was quashed, dismissed or modified? We are impelled to answer that question in the affirmative.

In considering the matter generally, it may be asked,

why, in such a case, without good and sufficient reason ignore the judicial command of the district court of a sister State. What, in such a matter, does comity mean, if not reasonable mutual recognition and sanction of each other's courts and their legitimate and authenticated judicial processes. A judgment of a foreign State may be sued upon. It is recognized as a judicial result, and has certain binding and substantial qualities. And why should not an injunction *pendente lite*, a direct command to a resident of the State in which the court which issues the injunction, sits, also, in such a case as this, be recognized as having some substance, and capacity to produce in another State some appropriate estoppel? The States are not foreign to each other in the sense of being completely segregated nations; they are parts of one general government, one national entity; they have their separate courts for certain domestic matters for various reasons, such, for example, as convenience and expediency, and to facilitate the administration of what may be called local domestic justice. That does not mean, however, that the judicial acts of a State court may not be recognized in certain apt circumstances as having some extraterritorial effect. The plaintiff here *in personam* was under an injunction issued by the court of the State in which she resided and where she had already a suit pending, and where the tort, if any, was committed and where the witnesses lived, not to continue at the same time in another State a cause of action for the same claim.

It has been urged in many cases that to give such recognition as is here contended for by the plaintiff, violates section 2 of article IV of the Federal Constitution, which provides that: "Citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." There seems to be considerable disagreement in the authorities as to the extent to which section 2 operates as a limitation upon

the power of a State court in the exercise of its discretion to refuse to entertain actions by citizens who are residents of other States where such actions are based on torts occurring in foreign jurisdictions. But it has been held that that provision of the Federal Constitution does not legally deprive a State court of the right in its discretion in certain exceptional cases to decline to exercise jurisdiction of foreign transitory tort actions where the parties are nonresidents and citizens of another State. That subject and the decisions thereon are elaborately treated in a discussion of the case of *Gregonis v. Philadelphia & R. Coal & Iron Co.*, in 32 A. L. R. 6.

In *Hunter v. Wenatchee Land Co.*, 36 Wash. 541, which was a suit for a breach of a contract made in Minnesota, the parties being nonresidents of the State of Washington, the court said, in considering the defense that the parties to the action were nonresidents of the State of Washington and, therefore, had no right to bring the action, but should be relegated to the courts of the State where the contract was made and where the parties resided: "Upon this question of the rights of aliens to litigate in the courts of different States, there is a wilderness of authority, and a great diversity of judicial opinion, some courts holding that, in the absence of statutory provision, foreign corporations are suable in domestic tribunals only upon causes of action arising within the jurisdiction; while others hold that it is an absolute constitutional right of the citizen of any State to seek redress in the proper court of any State, regardless of the question of residence; while still others hold that it is altogether a question of comity, and depends entirely upon the attitude of the particular State on that question." And that court further said: "It may be conceded, we think, that the general rule is that, if it appears that the action is brought by the alien in a foreign jurisdiction for the purpose of obtaining any undue advantage in that

jurisdiction, the courts will not lend themselves to the investigation and determination of such a case.''

The situation here is well illustrated by what the court said in *Davis v. Farmers' Co-operative Equity Co.,* 262 U. S. 312. In that case, where the court was considering the constitutionality of a statute of Minnesota which provided that any foreign corporation having a certain kind of agent within that State might be sued by delivering the summons to such agent, Mr. Justice Brandeis said:

''That the claims against interstate carriers for personal injuries and for loss and damage of freight are numerous; that the amounts demanded are large; that in many cases carriers deem it imperative, or advisable, to leave the determination of their liability to the courts; that litigation in States and jurisdictions remote from that in which the cause of action arose entails absence of employees from their customary occupations; and that this impairs efficiency in operation, and causes directly and indirectly, heavy expense to the carriers; these are matters of common knowledge. Facts, of which we, also, take judicial notice, indicate that the burden upon interstate carriers * * * is a heavy one; and that the resulting obstruction to commerce must be serious. During federal control absences of employees incident to such litigation were found, by the Director General, to interfere so much with the physical operation of the railroads, that he issued General Order No. 18 (and 18A) which required suit to be brought in the county or district where the cause of action arose or where the plaintiff resided at the time it accrued. That order was held reasonable and valid in *Alabama & Vicksburg Railway Co. v. Journey,* 257 U. S. 111. The facts recited in the order, to justify its issue, are of general application, in time of peace as well as of war. * * * But orderly, effective administration of justice, clearly does not require that a foreign carrier shall submit to a suit in a State in which the cause of action did not arise, in which the transaction giving rise to it was not

entered upon   *   *   *   and in which the plaintiff does not reside. The public and carriers are alike interested in maintaining adequate, uninterrupted transportation service at reasonable cost.   *   *   *   Avoidance of waste in interstate transportation, as well as maintenance of service, have become a direct concern of the public. By requiring from interstate carriers general submission to suit, it unreasonably obstructs, and unduly burdens, interstate commerce.''

In *Ferguson v. Neilson,* 11 N. Y. Supp. 534, the court said:

''All the parties to this action were and are residents of the State of Rhode Island, and the action is brought for personal injuries sustained by the plaintiff, through the alleged negligence of the defendant at Newport, R. I. Under these circumstances the court was asked to refuse to entertain jurisdiction of the action. The court denied this request.   *   *   *   It seems to be clear that the court erred in denying the request of the defendant to refuse to proceed with the action. It is the well settled rule of this state that unless special reasons are shown to exist which make it necessary or proper to do so, the courts will not retain jurisdiction of and determine actions between parties residing in another state for personal injuries received in that state. *Burdick v. Freeman,* 46 Hern. 138, and cases cited there.

''The reason of the rule is obvious,—because the courts of this state should not be vexed with litigation between nonresidents over causes of action arising outside of our own territorial limits. Our courts are not supported by the people for any such purpose.   *   *   *   Every rule of comity and natural justice and convenience is satisfied by giving redress in our courts to nonresident litigants, when the cause of action arose or the subject matter of the litigation is situated within this state.''

Counsel for the defendant have cited *Royal League v. Kavanagh,* 233 Ill. 175; *Thorndike v. Thorndike,* 142 Ill. 450; *Illinois Life Ins. Co. v. Prentiss,* 277 Ill. 387; *Hawley v. State Bank of Chicago,* 134 Ill. App. 97,

and *Harris v. Pullman*, 84 Ill. 20.    In the *Royal League* case, where, however, the question was whether an injunction should issue to restrain a person over whom the court had jurisdiction from bringing suit in another State, the court said:

"There is no question as to the right to restrain a person over whom the court has jurisdiction from bringing a suit in a foreign state. (*Harris v. Pullman*, 84 Ill. 20.)    The courts do not, in such cases, pretend to direct or control the foreign court but the decree acts solely upon the party.    The jurisdiction rests on the authority vested in courts of equity over persons within the limits of their jurisdiction and amenable to process, to stay acts contrary to equity and good conscience.    The State has power to compel its own citizens to respect its laws even beyond its own territorial limits, and the power of the courts is undoubted to restrain one citizen from prosecuting in the courts of a foreign state an action against another which will result in a fraud or gross wrong or oppression."

Likewise, in the *Thorndike, Illinois Life, Hawley* and *Harris* cases, the matters involved pertain to the question whether an injunction should issue, and not to the discretionary recognition of an extraterritorial injunction already outstanding.

It is true that there is nothing in the affidavit for the defendant, upon which the motion to continue was based, showing in detail, or in any way, the reason why the court of Blackhawk county issued the injunction.    Counsel for the defendant in their brief state that the injunction was based upon the statute of Iowa prohibiting the solicitation of personal injury suits where the injury occurred within that State, and prohibiting the prosecution of such suits outside of that State.    That seems to be a voluntary statement unsupported by anything in the record.    We are left, therefore, to consider the effect of the general facts which are recited in the affidavit, including the fact that there

was an injunction outstanding against the plaintiff and her attorney.

The *Kavanagh* case announces that a court in this State may, in certain situations, enjoin a citizen here from prosecuting a case in another State; and by parity of reasoning that implies that a court of Iowa, for example, may exercise a similar authority. And a consequence of both those deductions is, that in proper cases the courts of each State may recognize the injunctions of the courts of the other.

The Iowa court having issued the injunction, the sole question then is whether the trial judge in this case, as a matter of discretion, considering all the circumstances, should have recognized it as a justification for granting the defendant's motion. We think that the law and the reason of the case impel the conclusion that the motion should have been allowed. The judgment, therefore, will be reversed and the cause remanded.

*Reversed and remanded.*

THOMSON, P. J., and O'CONNOR, J., concur.