152

## Wabash Railway Company, Appellee, v. William Lindsey, Appellant.

### Gen. No. 8,695.

Opinion filed January 16, 1933.

Luther W. Adamson, for appellant.

Homer Hall, Walter Bellatti and Paul D. Moriarty, for appellee; N. S. Brown, of counsel.

Mr. Presiding Justice Eldredge delivered the opinion of the court.

The Wabash Railway Company, appellee, filed its bill in the circuit court of Morgan county to enjoin the prosecution by appellant, William Lindsey, a resident of said Morgan county and State of Illinois, of a civil suit for damages for personal injuries against said railway company, pending at the time the bill was filed in the circuit court of Daviess county, State of Missouri, sitting at the City of Gallatin. A temporary injunction was issued, whereupon appellant filed a demurrer to the bill which was overruled and appellant abiding by his demurrer, the temporary injunction was made permanent and the case comes to this court on appeal to review the action of the chancellor.

It is alleged in substance in the bill that appellee was organized under the laws of the State of Indiana and operates its railway tracks in Indiana, Illinois, and numerous other States in the United States; that it carries passengers and freight and United States Mail for hire and under its contract with the United States Government, it must carry said mail with speed and dispatch or suffer large penalties on account of failure so to do; that it has complied with the laws of Illinois to authorize it to operate its railroad in this State and that its lines extend from Decatur, Macon county, Illinois, into and through the Village of Alexander, Morgan county, Illinois, into and through the City of Jacksonville, Morgan county, Illinois and to East Hannibal, Pike county, Illinois, and that it also operates its lines through other counties in Illinois, in all of which counties in said State it maintains railway stations,

offices, freight houses and railway yards for the transaction of its business, and employs clerks, servants and employees, through whom legal service could at all times be had; that William Lindsey (appellant) was on November 29, 1929, an employee of the railway company (appellee) and was a member of a section crew working upon said railway and was injured in a collision between a motor car operated by a gasoline engine and a vehicle at an intersection of a road crossing with said railway; that said Lindsey is a citizen and resident of said Village of Alexander and has been for 20 years; that said railway company is informed and believes and charges the truth to be, that prior to and at the time of the aforesaid accident, Lindsey's attorneys were engaged in the practice of law in Kansas City, Missouri; that in some manner unknown to said railway company, Lindsey was induced to employ said attorneys and prosecute a claim for damages for said injuries and said attorneys were permitted to select a forum for the institution and trial of said suit in a place remote from the place of accident and far removed from claimant's residence, where the railway company would be put to unnecessary and unjust hard-ships in the production of its witnesses and would be at a serious disadvantage in the production of necessary documentary evidence to establish its defense; that in Jacksonville, Morgan county, Illinois, in which county said Lindsey resides, there are regularly held terms of the circuit court; that in each of the other counties in the State of Illinois, through which said railroad passes, there are regularly held terms of the circuit court annually and that in each of said counties there were numerous agents and employees upon whom service of summons could be had by said Lindsey in any suit brought by him to recover damages on account of his injuries, and that said facts were well known to Lindsey and to his attorneys; that on October 7, 1930,

without any reason, except to harass and inflict unjust hardship and to secure an unjust and unfair advantage over said railway company, said attorneys instituted suit in Gallatin, Daviess county, Missouri, which is situated in the western part of Missouri, approximately 250 miles from Alexander; that said Town of Gallatin has approximately 1825 people, with meager hotel accommodations; that the railway company's witnesses would have to travel approximately 200 to 275 miles from their homes in Illinois to Gallatin and that each witness would be compelled to consume approximately 24 hours in traveling to and from his home to said Gallatin; that said Lindsey and his attorneys knew of the disadvantage and burden to the railway company for the purposes aforesaid and that said suit was brought for the sole and only purpose of placing said burden on the railway company; that on information and belief it is charged that Lindsey and his attorneys conspired and agreed that they would select a forum in a small town remote from the State of Illinois and far removed from the place of accident and at a point where it would be difficult for the railway company to produce its material witnesses and evidence for the trial, and that in so doing the railway company would be at a disadvantage, and that rather than pay out large sums of money necessary for transportation of its necessary witnesses, it would settle and compromise said claim and that in the event said claim was not settled, the railway company being unable to produce certain of its witnesses, a verdict would be rendered for said Lindsey; that Lindsey never resided in the county of Daviess and the State of Missouri and is without friends, associates or acquaintances in said locality, and that the institution of the suit in Daviess county was a scheme and device to force the railway company to compromise said claim; that the petition setting forth the pretended cause of action of said

Lindsey charges that said motor hand car, by reason of the carelessness and negligence of the defendant and its servants and agents other than the plaintiff, was caused, suffered and permitted to collide violently with an automobile, and that the plaintiff does not allege therein more particularly wherein the defendant's negligence lay, for the reason that the plaintiff was sitting with his back in the direction in which said motor hand car was going, etc.; that said charge of negligence is general and vague and the railway company cannot know or be advised as to what evidence will be produced on the trial by the plaintiff as to the specific acts of omission or commission constituting the negligence complained of; that the burden of preparing to meet such vague and indefinite charge of negligence is greater upon the railway company, when the forum is 250 miles from the scene of the accident, than it would be if brought at the home of William Lindsey; that said petition charges that the collision occurred "at a much used and greatly travelled road crossing" whereas, it is the contention of the railway company that the crossing was a private road, and said fact will be an issue on the trial of said case; in either event, the obligations, duties and rights of the railway with respect to said crossing are controlled by the laws of Illinois and not by the laws of Missouri; that it will be an unjust hardship upon the railway to be compelled to have the laws of the State of Illinois determined by the courts of Missouri and to transport to Missouri necessary witnesses to testify as to the laws of the State of Illinois; that the railway company will be unable to secure the personal attendance of numerous witnesses before the jury in Missouri because there is no process by which such witnesses could be compelled to leave the State of Illinois to testify in Missouri; that among the witnesses whose testimony would be of great value to the railway company are:

"(a) Witnesses who knew of the origin and nature of the road crossing and tracks of the railway at which the said accident occurred.

"(b) Witnesses who were personally present at the time and place of the accident; all of whom reside in or near Morgan County, Illinois.

"(c) Witnesses who know the duties, responsibilities and care required to be used and exerted by the operator of said motor hand car and by William Lindsey, as an occupant of said car under the rules, regulations and instructions promulgated by the railway, and witnesses who know that such rules and regulations were well known to William Lindsey; all of whom reside in Morgan County, Illinois.

"(d) Witnesses familiar with the weather conditions at the time and place of accident, including the official weather bureau records of the United States Department of Agriculture kept at Jacksonville, Illinois; all of said witnesses residing in the counties of Morgan and Sangamon.

"(e) The doctors and surgeons who attended William Lindsey in Jacksonville, Illinois, and Decatur, Illinois, all of which witnesses live in Illinois.

"(f) Witnesses who observed the progress of the recovery of William Lindsey, all of whom reside in Morgan County, Illinois.

"(g) The fellow employees of William Lindsey who observed the progress of his recovery and his ability to work when he returned to work on the 16th day of March, 1930; all of whom reside in Morgan County, Illinois.

"(h) The witnesses who attested a certain release hereinafter mentioned; all of whom reside in Alexander, Morgan County, Illinois." That on the 5th day of April, 1930, at Alexander, Illinois, said Lindsey, for a good and valuable consideration, executed and delivered to said railway company a full and complete re-

lease under seal of the cause of action upon which said suit was brought in Missouri, a copy of which release is attached to the bill and made a part thereof; that under the laws of Illinois said release is a complete bar to said action and could not be impeached unless the plaintiff was deceived or tricked into signing the same when he thought he was signing something else; that there was no deceit or trickery practiced; that under the law of Missouri said release can be impeached and overcome for alleged fraud or mistake not amounting to deceit or trickery as to the character of the instrument executed; that under the law of Illinois 12 jurors are required while under the law of Missouri nine jurors can render a verdict; that papers and records not in the possession and control of the railway company are necessary for its proper defense; that the commissioner authorized to take depositions is not under the laws of Missouri authorized to compel the production of such books, papers and records which comprise among other things hospital records, X-ray pictures of plaintiff's legs and ankles, weather reports and documents affecting the status of said road crossing as a public or private road; that said railway company should not be compelled to present its case to a jury in Missouri on written depositions, but should be entitled to try it where it can compel the personal attendance of its witnesses; that said railway company has a good and meritorious defense to said action; that said action so brought in Missouri, in view of the facts set forth, violates the public policy of the State of Illinois, and is against morals, natural justice and the legal interests of the railway; that said action in Missouri is set for trial February 4, 1931, and that unless restrained from doing so, said Lindsey will leave the jurisdiction of the courts of Illinois, and continuously remain in Missouri, thereby evading the process of the courts of Illinois; that the cost of transporting said

witnesses and their maintenance would be $20 to $30 per day and if said witnesses were required to stay one week the total cost would be in excess of $2,000; that if said suit were tried in Illinois, 80 per cent of said costs would be saved to the railway company, etc.

In 1876 in the case of *Harris v. Pullman,* 84 Ill. 20, the following doctrine was announced: ''There is no question as to the right to restrain a person, over whom the court has jurisdiction, so that he can be proceeded against, by a personal attachment, from commencing suit within a foreign State; and the English practice was to allow the prosecution of suits already commenced to be thus enjoined. But it has been held in this country, that, after suits are commenced in one of the States, it is inconsistent with inter-State harmony that their prosecution should be controlled by the courts of another State. *Mead v. Merritt,* 2 Paige 404; *Bicknell v. Field,* 8 id. 443.'' Since then the same question involved in the case at bar has been before the courts of this State on several occasions. It was very aptly said by the court in *Mobile & Ohio R. Co. v. Parrent,* 260 Ill. App. 284: ''Practically all of the courts agree that a resident of a State may be enjoined, in a proper case, from prosecuting a suit in the courts of another State. The courts differ on the question as to what constitutes a proper case for the exercise of such jurisdiction. No general rule can be laid down as to when the court ought to enjoin a party from prosecuting a suit in a foreign jurisdiction. Each case must be ruled by its own facts. 14 R. C. L. 414; 32 C. J. 116. That is recognized by all the courts.'' In *Royal League v. Kavanagh,* 233 Ill. 175, the court held that there is no question as to the right to restrain a person over whom the court has jurisdiction from bringing a suit in a foreign State as the State has the power to compel its own citizens to respect its laws even beyond its own territorial limits and to restrain a citizen from prose-

cuting in the courts of a foreign state an action against another which will result in a fraud or gross wrong or oppression, but it was also held: "But the court will not restrain the prosecution of a suit in a foreign jurisdiction unless a clear equity is presented requiring the interposition of the court to prevent a manifest wrong and injustice. It is not enough that there may be reason to anticipate a difference of opinion between the two courts, and that the courts of the foreign State would arrive at a judgment different from the decisions of the courts in the State of the residence of the parties. (*Carson v. Durham,* 149 Mass. 52.) It is not inequitable for a party to prosecute a legal demand against another in any forum that will take legal jurisdiction of the case, merely because that forum will afford him a better remedy than that of his domicile. To justify equitable interposition it must be made to appear that an equitable right will otherwise be denied the party seeking relief. *Thorndike v. Thorndike,* 142 Ill. 450.

"A person has the right to select such tribunal having jurisdiction as he chooses for the prosecution of his rights, and the court which first obtains jurisdiction will retain it. Such jurisdiction cannot be defeated because the defendant may prefer another tribunal in which he supposes the decision will be more favorable to him."

In the case of *Illinois Life Ins. Co. v. Prentiss,* 277 Ill. 383, 384, it was alleged in the bill as the basis for an injunction many of the reasons appearing in the bill here under consideration: (1) that if the cause was tried in Missouri the complainant would be deprived of a right of trial by jury as guaranteed to the citizens of Illinois in that the Constitution of Missouri provides that in trials of civil cases three-fourths of the members of the jury concurring can render a verdict; (2) that it is the intention of the defendant by the institu-

tion of a suit in Missouri to harass and annoy the complainant and obtain an unjust advantage to which the defendant is not entitled under the laws of Illinois; (3) that in order to adequately present its defense it will be necessary for complainant to produce a large number of witnesses, some of them being public officials and employees, others being medical experts, and others being business men and other persons not concerned in the litigation and strangers to complainant; (4) that all the witnesses who complainant knows would be necessary and procurable for its defense are residents of Illinois; (5) that some persons whose testimony is necessary will be unwilling witnesses and others wholly indifferent and it will be impossible to procure the attendance at the trial in Missouri of some of these witnesses; (6) that to procure the attendance of those who will be willing to go will put complainant to great and unnecessary expense and cause great inconvenience to the witnesses themselves; (7) that it will be impossible to procure and offer certain books and records in the possession of third parties and transport them to Missouri. The court in that case held: "A party has the legal right to bring his action in any court which has jurisdiction of the subject matter and which can obtain jurisdiction of the parties. . . . While the doctrine announced in the *Kavanagh* case, *supra,* is now applied in every jurisdiction of the Union, this power is sparingly exercised, and it is only where it clearly appears that the prosecution of an action in a foreign State will result in a fraud, gross wrong or oppression, that a court of equity will interfere with the general right of a party to press his action in any jurisdiction which he may see fit and in as many of them as he chooses and restrain him from the prosecution of such a suit. . . . Appellant has the legal right to bring his action against appellee on this policy of insurance in the State of Missouri, and

this right will not be interfered with unless a clear equity is presented requiring the interposition of the court to prevent a manifest wrong and injury. The bare fact that a suit on this policy has been begun and is now pending in this State, in the absence of equitable considerations, furnishes no ground to enjoin appellant from suing his claim in a foreign jurisdiction, although the cause of action is the same and arises out of the contract of insurance involved in the litigation in the circuit court of Cook county. (*Ambursen Hydraulic Construction Co. v. Northern Contracting Co.,* 140 Ga. 1; *Mutual Life Ins. Co. v. Harris,* 96 U. S. 588.) Before the prosecution of the second suit in a foreign jurisdiction will be enjoined the propriety and necessity of confining the litigation to the court in which the first suit is instituted must appear. That it may be inconvenient for appellee to go to a foreign State to try the suit, or that the maintenance of two suits will cause double litigation and added expense, is insufficient cause for an injunction against prosecuting the suit proposed to be brought in the State of Missouri and does not justify any interference by a court of equity. *Freick v. Hinkly,* 122 Minn. 24; *Mutual Life Ins. Co. v. Harris, supra; Mason v. Harlow,* 84 Kan. 277; *Ambursen Hydraulic Construction Co. v. Northern Contracting Co. supra.* . . . The principal contention made by appellee is, that the bringing of the suit against it in the State of Missouri, both parties being citizens of the State of Illinois, would be a violation of the right guaranteed to it by section 5 of article 2 of the constitution of 1870, which is, in part, as follows: 'The right of trial by jury as heretofore enjoyed, shall remain inviolate.' Appellee treats and regards this as a right guaranteed to citizens of Illinois. It is a right guaranteed to litigants who may become involved in litigation in the courts of Illinois, whether such litigants be citizens of Illinois or else-

where. It is not until a citizen of Illinois becomes a litigant in the courts of Illinois that this guaranty contained in the bill of rights applies to him, and should his adversary be a citizen of some other State or country the same guaranty applies to him as well. . . . In its capacity as a defendant to a suit upon a policy of insurance issued by it appellee is no more a citizen of the State of Illinois than it is of the State of Missouri. It is doing business in each of these States. . . . Appellee relies upon the line of cases which hold that the bringing or prosecuting such suits will be enjoined where it appears the suits are brought or threatened to avoid or defeat the operation of the laws of the State where both parties to the suit reside. . . . Appellee is simply complaining here that if it is compelled to defend in the State of Missouri it will not be entitled to the same procedure in the trial there which is followed in the courts of this State. This is not depriving it of any substantial right that would result in wrong or oppression.''

Although it is not alleged in the bill in the case at bar that the Wabash Railway Company operates its railway in the State of Missouri, it seems to be conceded by both parties that such is the case and there are some averments in the bill which tend to confirm that fact. It is alleged in the bill that appellant instituted its suit against appellee in the court in Daviess county, Missouri, and there is a further averment that said case has been set for trial. This implies that personal service was obtained in that State. Obviously, unless appellee did in fact do business in the State of Missouri, then no court in Missouri would obtain jurisdiction of the person of appellee and no suit could be maintained in said State against appellee and there would be no occasion or ground for restraining the prosecution of a suit that could not be prosecuted. Courts cannot take judicial notice that certain rail-

roads run through certain States and unless there exists the inference that the Wabash Railway Company operates its line through the State of Missouri or, at least, transacts business in that State through its agents therein, then the bill would be bad for the reasons above stated. If there exists the inference that it does do business in the State of Missouri and has agents there on whom service has been obtained, then it is as much a resident of Missouri as it is of Illinois or Indiana or any other State through which it operates or in which it does business, as it is subject to the jurisdiction of the courts in any State in which it operates its railroad or maintains its agent for the transaction of business therein. In accordance with the principles of law as adopted by the courts of this State, in our opinion the chancellor erred in overruling the demurrer to the bill and in granting the permanent injunction; therefore, the decree of the circuit court is reversed and the cause remanded with directions to dissolve the injunction and to sustain the demurrer to the bill.

*Reversed and remanded with directions.*