(No. 34546.—

LEWIS. W. JAMES, Admr. of the Estate of Colin Kahl, Appellant, *vs.* GRAND TRUNK WESTERN RAILROAD COMPANY, Appellee.

*Opinion filed September 18, 1958.*

SCHAEFER, HERSHEY, and DAVIS, JJ., dissenting.

JAMES A. DOOLEY, of Chicago, for appellant.

WINSTON, STRAWN, SMITH & PATTERSON, of Chicago, (GERARD E. GRASHORN, and EDWARD J. WENDROW, of counsel,) for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This court has allowed leave to appeal from an Appellate Court judgment affirming the dismissal of a supplemental complaint and the denial of a motion to enjoin the defendant railroad from enforcing an injunction it obtained in Michigan restraining plaintiff Lois M. Kahl, then ad-

ministratrix, from proceeding with her wrongful death action in the superior court of Cook County.

The issues are essentially whether the Illinois court, having prior jurisdiction of a wrongful death action instituted by a nonresident plaintiff, must recognize an out-of-State injunction restraining the plaintiff from proceeding with that action; and whether the Illinois court, to protect its jurisdiction of the wrongful death action, may issue a counterinjunction restraining defendant from enforcing its injunction against plaintiff in the State of her residence.

The operative facts pertaining to these issues are uncontroverted. Plaintiff, Lois M. Kahl, as administratrix of her deceased husband's estate, instituted suit against defendant, Grand Trunk Western Railroad Company, on February 16, 1956, in the Illinois court, under the Michigan Wrongful Death Act (Mich. Stat. Ann., sec. 27.712) for the death of her husband on February 16, 1955, allegedly through the negligence of the defendant railroad. Defendant obtained, without notice to plaintiff, a temporary injunction in Cass County, Michigan, where plaintiff resided, restraining plaintiff from prosecuting her Illinois action. Plaintiff thereupon filed a supplemental complaint in the Illinois court, alleging that defendant had failed to question plaintiff's right to proceed in the Illinois court by appropriate motion therein; that plaintiff believed that she could not obtain a fair trial in Cass County, Michigan; that such Michigan suit was instituted by defendant to prevent plaintiff from obtaining a fair trial in the Illinois courts and to force her into an unjust settlement of her cause of action, and would result in irreparable injury.

On the basis of these allegations, plaintiff moved for a temporary injunction enjoining the enforcement of the Michigan injunction. On August 9, 1956, the trial court denied plaintiff's motion, and also dismissed her supple-

mental complaint, although no answer or counteraffidavits were filed by defendant in connection therewith. Plaintiff appealed, and the Appellate Court affirmed the trial court on May 21, 1957.

Plaintiff did not appeal from the Michigan injunction when it was learned that the appeal bond would not have the effect of staying the proceedings. Thereafter, plaintiff was arrested pursuant to a body attachment issued by the Michigan court on the application of defendant's counsel, O'Connor, and was advised that she would be imprisoned for contempt unless she complied with the injunction. Although she then wrote to her Illinois attorney discharging him and directing him to withdraw her case from the Illinois courts, she subsequently advised him that the letter did not express her true desires, but had been coerced by threat of imprisonment by defendant's counsel.

A second injunction suit was instituted by defendant in Cass County, Michigan. Plaintiff did not appear and was defaulted, and an order was entered by the Michigan court on July 17, 1957, enjoining her from further prosecuting her Illinois action and directing her to withdraw it.

Thereafter, on September 6, 1957, upon a showing that defendant's attorney was insisting that plaintiff sign a stipulation to dismiss her Illinois proceedings, a Justice of this court entered an order restraining the defendant from taking further action against plaintiff on the two Michigan injunction suits, "or in any other suit filed in said Court of Cass County, Michigan, or in any other Court, until the Supreme Court of Illinois has acted upon the Petition for Leave to Appeal." On September 20, 1957, this court denied defendant's motion to vacate that restraining order, allowed the petition for leave to appeal, and entered a similar injunction restraining defendant until this court disposed of the case.

On the same day, defendant's counsel, O'Connor, who is

also prosecuting attorney for Cass County, Michigan, filed a petition in the probate court of Cass County to remove plaintiff as administratrix. On September 26, 1957, the probate court of Cass County removed plaintiff as administratrix and appointed Adam Greenawalt as administrator to succeed her.

Greenawalt's affidavit, filed in this court, indicates that he is 83 years of age, is bailiff of the circuit court of Cass County; that upon being appointed administrator he was advised by defendant's counsel, O'Connor, that the estate might have a cause of action against the railroad; that he contacted an attorney and instructed him to consult with O'Connor, but this attorney did not desire to handle the case, whereupon Greenawalt advised O'Connor that he desired to retain counsel outside of Cass County and asked O'Connor to have Donahue, an attorney from another county, contact him. Donahue turned the matter over to his assistant, Drew, who instituted action in Cass County on behalf of Greenawalt as administrator of the estate.

On November 20, 1957, Lewis W. James was appointed to succeed Greenawalt as administrator, and in Greenawalt's letter to his successor he stated that he had not even talked to Drew about the case, and that all arrangements for Drew to represent the claim against the railroad were made by the defendant railroad's attorney O'Connor.

With reference to these circumstances, the railroad takes the position that it did not violate the temporary injunctive order of September 20, 1957, because the act of its Michigan attorney in having plaintiff removed as administratrix was taken by O'Connor as prosecuting attorney for Cass County, Michigan, despite defendant's request to defer such action. Defendant also explained that O'Connor advised defendant that he intended to prosecute the petition for plaintiff's removal on his own, irrespective of the railroad's instructions, since under his contract with

defendant, his duties as public officer would prevail over his duties as counsel. Moreover, defendant contends that even if the railroad had instituted the removal proceeding, that action would not constitute a violation of the terms of this court's order.

On this appeal plaintiff argues that she had an unquestionable right to file the action in the Illinois court; that where a court has obtained prior jurisdiction of an action, injunctive relief is proper to prevent defendant from transferring the action elsewhere through an action in another forum; and that neither the full-faith-and-credit clause nor comity require the Illinois court to respect the Michigan venue statute and the decision of the Michigan court in this case.

The defendant argues, however, that this court will not, by counterinjunction, aid a citizen of another State to violate an injunction against prosecuting an action in Illinois; that the counterinjunction cannot be justified to protect the prior injunction of the Illinois court, since the Michigan injunction was *in personam* only; and that such counterinjunction would compel a party to give up vested rights and would violate the full-faith-and-credit and due-process clauses of the Federal constitution.

The precise issues of the operative effect of an out-of-State injunction on pending litigation, and the propriety of the issuance of a counterinjunction involved herein, have never been adjudicated by this court. Consequently, in resolving those issues we shall consider not only the cases of other jurisdictions relied upon as precedent, but the relevant policies of this jurisdiction underlying the issues, as well as the wealth of law and comment by courts and scholars who have wrestled with the legal strategem of this battle over the selection of the proper forum for trial. Place of Trial in Civil Actions, 43 Harv. L. Rev. 1217; 61 Yale L. J. 1206; 14 Minn. L. Rev. 494; 6 A.L.R.2d 896 *et seq.*;

122 A.L.R. 1425 *et seq.*; 85 A.L.R. 1351 *et seq.*; 37 Harv. L. Rev. 157; 72 U. Pa. L. Rev. 429.

In the instant case it is uncontroverted that the Illinois trial court had proper jurisdiction of the parties, and that it was bound under the full-faith-and-credit clause of the Federal constitution to recognize the Wrongful Death Act of Michigan, and could not refuse to entertain plaintiff's action on the ground that it was based on the wrongful death statute of a sister State. (*First National Bank of Chicago* v. *United Air Lines, Inc.*, 342 U.S. 396, 96 L. ed 441; *Hughes* v. *Fetter*, 341 U.S. 609, 95 L. ed. 1212; *Miles* v. *Illinois Central Railroad Co.*, 315 U.S. 698, 703, 86 L. ed. 1129; 61 Yale L. J. 1206.) Moreover, it is the undisputed policy of this State to keep its courts open to residents and nonresidents alike. (*Wintersteen* v. *National Cooperage and Woodenware Co.*, 361 Ill. 95; *Opp* v. *Pryor*, 294 Ill. 538.) In that connection, the court in the *Wintersteen case* stated at p. 101: "Neither does the fact that the plaintiff is a non-resident deprive him of his remedy in the courts of this State. There is no statute in the State denying redress of grievances by reason of non-residence. The policy of our State has always been to permit persons regardless of residence to bring suits in our courts. Citizenship has never been a condition precedent to the right of an individual to sue in our courts. [Citations]"

Where, however, suits by nonresidents have no connection whatever with this jurisdiction, and the selection of this forum is purely vexatious, this court has held, pursuant to the authorization by the United States Supreme Court (*Missouri ex rel. Southern Railway Co.* v. *Mayfield*, 340 U.S. 1, 95 L. ed. 3) that the doctrine of *forum non conveniens* may be invoked to dismiss such cases (*Cotton* v. *Louisville and Nashville Railroad Co.*, 14 Ill.2d 144.) In the instant case, however, no such defense of *forum non conveniens* was interposed by defendant. Instead, it sought to remove the case from the Illinois court by enjoining

plaintiff in the State of her residence from prosecuting the Illinois action.

With reference to the Michigan injunction, while we quite agree with defendant's repeated assertion that a court of equity has power to restrain persons within its jurisdiction from instituting or proceeding with foreign actions (*Cole* v. *Cunningham*, 133 U.S. 107, 33 L. ed. 538; 6 A.L.R.2d 896), we note that the exercise of such power by equity courts has been deemed a matter of great delicacy, invoked with great restraint to avoid distressing conflicts and reciprocal interference with jurisdiction. 14 Am. Jur. 451; *Harris* v. *Pullman*, 84 Ill. 20; *Royal League* v. *Kavanagh*, 233 Ill. 175; *O'Loughlin* v. *O'Loughlin*, 6 N.J. 170, 78 A.2d 64; *Boston and Maine Railroad Co.* v. *Whitehead*, 307 Mass. 106, 29 N.E.2d 916.

Illinois has consistently followed the course of refusing to restrain the prosecution of a prior instituted action pending in a sister State unless a clear equity is presented requiring the interposition of the court to prevent a manifest wrong and injustice; and neither a difference of remedy afforded by the domicile and the forum nor mere inconvenience and expense of defending will constitute grounds for such an injunction. (*Western Union Telegraph Co.* v. *Pacific and Atlantic Telegraph Co.*, 49 Ill. 90; *Harris* v. *Pullman*, 84 Ill. 20; *Thorndike* v. *Thorndike*, 142 Ill. 450; *Royal League* v. *Kavanagh*, 233 Ill. 175, 183; *Illinois Life Ins. Co.* v. *Prentiss*, 277 Ill. 383; *Mobile and Ohio Railroad Co.* v. *Parrent*, 260 Ill. App. 284; *Wabash Railway Co.* v. *Lindsey*, 269 Ill. App. 152.) That course is based on the policy that after suits are commenced in one State, it is inconsistent with inter-State harmony if their prosecution be controlled by the courts of another State. *Harris* v. *Pullman*, 84 Ill. 20, 28.

Conversely, where other States have enjoined litigants from proceeding with a previously instituted Illinois action, this jurisdiction has followed the overwhelming judicial

opinion that neither the full-faith-and-credit clause nor rules of comity require compulsory recognition of such injunctions so as to abate or preclude the disposition of the pending case. Restatement, Conflict of Laws, sec. 450, p. 534; 21 C.J.S. 860; 43 C.J.S. 503; *Taylor* v. *Atchison Topeka and Santa Fe Railway Co.,* 292 Ill. App. 457; *Kleinschmidt* v. *Kleinschmidt,* 343 Ill. App. 539; *Alford (Lindsey)* v. *Wabash Railway Co.* 229 Mo. App. 102, 61 S.W.2d 369, and 73 S.W.2d 277; *Union Pacific Railway Co.* v. *Rule,* 155 Minn. 302, 193 N.W. 161; *Kepner* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 322 Mo. 299, 15 S.W.2d 825, cert. denied 280 U.S. 564; *Frye* v. *Chicago, Rock Island and Pacific Railway Co.* 157 Minn. 52, 195 N.W. 629, cert. denied 263 U.S. 723; *Leet* v. *Union Pacific Railway Co.* 25 Cal.2d. 605, 144 P.2d 64, subsequent opinion 155 P.2d 42; *State ex rel. Bossung* v. *District Court,* 140 Minn. 494, 168 N.W. 589; *Peterson* v. *Chicago, Burlington and Quincy Railway Co.* 187 Minn. 235, 244 N.W. 823; *Doyle* v. *Northern Pacific Railroad Co.* 55 F.2d 708.

In refusing to recognize and give legal effect to an out-of-State injunction restraining nonresidents from prosecuting a previously instituted Illinois case, the Illinois Appellate Court in *Taylor* v. *Atchison Topeka and Santa Fe Railway Co.,* 292 Ill. App. 457, relied upon *Alford* v. *Wabash Railway Co.* 229 Mo. App. 102, 73 S.W.2d 277, where the Missouri court clearly expressed this majority rule. The court reiterated the language in a prior hearing of the case (*Alford (Lindsey)* v. *Wabash Railway Co.* 61 S.W.2d 369) and stated: "Defendant's first point is that the court below erred in refusing to abate this suit on account of the injunction. There is no question but that the circuit court of Morgan County had jurisdiction to issue an injunction in a case of this kind [citation], but the decisions are in conflict as to whether the court wherein the suit is pending, the prosecution of which is sought to be

enjoined, will stay the proceedings or abate the suit by reason of such an injunction. If it does so, it is not because the Federal constitution requires it so to act, but solely upon the ground of comity. [Citation.] The right of the circuit court of Daviess County to proceed having attached before the injunction, we know of no rule of comity that would require the court below to discontinue the proceedings in this case."

Similarly, in *State ex rel. Bossung* v. *District Court,* 140 Minn. 494, 168 N.W. 589, the Minnesota court held that irrespective of the propriety of the out-of-State injunction restraining the plaintiff from proceeding with the local action, the local court could be compelled by a writ of *mandamus* to proceed with the pending wrongful death action based upon a foreign statute. The court further noted that if it refrained from proceeding with the case because of the injunction issued by a court of a sister State, such court would be given substantial control over Minnesota litigation.

It would serve no purpose to discuss each of the aforementioned citations, which are in accord. Suffice to note, there is negligible authority for the recognition of foreign injunctions in the local court where the case is pending (39 Yale L. Rev. 719), as urged by defendant.

Although such a foreign injunction was recognized on the grounds of comity by the Mississippi court in *Fisher* v. *Pacific Mutual Life Ins. Co.,* 112 Miss. 30, 72 So. 846, cited by defendant, that decision was specifically rejected as authority by the court in the *Bossung case,* and has not had wide approbation in other jurisdictions.

Defendant also cites the Illinois Appellate Court cases of *Kleinschmidt* v. *Kleinschmidt,* 343 Ill. App. 539, and *Allen* v. *Chicago Great Western Railroad Co.,* 239 Ill. App. 38, but it is not clear how they can be deemed to support defendant's position. In the *Kleinschmidt case* the court stated that it was not required to recognize such an out-of-

State injunction, and while the court might do so out of comity, failure to do so would in no way affect the validity of its decision. In considering the merits of the cause, the court held that since litigation on the merits had previously been instituted in the Florida court, that court should be permitted to proceed with the disposition of the cause.

Nor can defendant take comfort in the *Allen case,* where the plaintiff had commenced an action on the merits in a sister State, and while such action was pending, plaintiff instituted a similar action on the identical cause in Illinois, which defendant enjoined, and the Illinois Appellate Court held that it was an abuse of discretion to deny defendant's motion to continue the Illinois action pending the determination of the original cause in the sister State.

Clearly, in both of those cases it was not the issuance of the out-of-State injunction, but the prior institution of the original cause of action in another State that deterred the Illinois Appellate courts from adjudicating them. Consequently, those decisions lend authority to plaintiff's contention that a court which first obtains jurisdiction of the merits of a cause should be permitted to retain it until the cause is finally adjudicated, without interference from the courts of other States. In fact, the *Allen case* reaffirms and quotes from the *Kavanagh case,* where that rule is stated at p. 183: "A person has the right to select such tribunal having jurisdiction as he chooses for the prosecution of his rights, and the court which first obtains jurisdiction will retain it. Such jurisdiction cannot be defeated because the defendant may prefer another tribunal in which he supposes the decision will be more favorable to him."

In the instant case the Michigan injunction was apparently issued pursuant to the policy of the State embodied in a Michigan venue statute restricting venue in suits against railroads to the county in which plaintiff resides, if the railroad lines traverse that county. Complied Laws, Mich. 1948, sec. 610.1.

While it is not the province of this court to adjudge the constitutionality of the Michigan venue statute, it may be noted that similar statutes confining transitory actions to the State of plaintiff's residence have been held unconstitutional. (*Atchison Topeka and Santa Fe Railway Co.* v. *Sowers,* 213 U.S. 55, 53 L. ed. 695; *Tennessee Coal, Iron, and Railroad Co.* v. *George,* 233 U.S. 354, 58 L. ed. 997.) In the *Tennessee Coal Company* case the court stated at p. 360: "But venue is no part of the right; and a state cannot create a transitory cause of action and at the same time destroy the right to sue on that transitory cause of action in any court having jurisdiction. That jurisdiction is to be determined by the law of the court's creation, and cannot be defeated by the extraterritorial operation of a statute of another state, even though it created the right of action."

In the light of this reasoning, we cannot escape the observation that if statutes prohibiting or circumscribing the export of causes of action may not be given extraterritorial effect, it is hard to see why an equity decree should be entitled to any greater recognition. A court should be subject to the same limitations. 43 Harv. L. Rev. 1217, 1245; 37 Harv. L. Rev. 157, 158.

Therefore, it is evident that legal consistency, as well as the weight of authority, do not require us to recognize the Michigan injunction, and we may retain jurisdiction and proceed with plaintiff's wrongful death action. Such a course, however, is not practicable in the instant case, unless plaintiff, who is subject to imprisonment and other coercive tactics if she fails to dismiss her Illinois action, is protected by enjoining defendant from enforcing the Michigan injunction by contempt proceedings. A plaintiff cannot be expected or required to risk imprisonment so that the court may retain jurisdiction of a cause.

This brings us to the ultimate issue in this case: whether the court which first acquires jurisdiction of the parties and of the merits of the cause can issue a counterinjunction re-

straining a party before it from enforcing an out-of-State injunction which requires the dismissal of the local cause and ousts the forum of jurisdiction.

There is no quarrel with the basic principle that a court has a duty, as well as power, to protect its jurisdiction over a controversy in order to decree complete and final justice between the parties and may issue an injunction for that purpose, restraining proceedings in other courts. 43 C.J.S. 499; *National City Bank of New York* v. *Beebe*, 131 N.Y.S.2d 67; 6 A.L.R.2d 896, 902; 122 A.L.R. 1425; 14 Am. Jur. 435.

Defendant, however, claims that there is no reason to invoke this principle in the instant case since the Michigan injunction in no way interferes with the jurisdiction of this court, but merely affects the litigants. In support thereof defendant cites the equitable maxim, "equity acts *in personam*," invoked since the days of Coke and Bacon to obviate open conflicts between law and equity courts, and the general principle that courts of equity have the power to prevent those amenable to their own process from instituting or carrying on suits in other States which will result in injury or fraud.

In applying these principles to the instant case, we cannot close our eyes to the fact that the intended effect of the Michigan injunction, though directed at the parties and not at this court, is to prevent the Illinois court from adjudicating a cause of action of which it had proper jurisdiction. For it is patent that if the litigants are coerced to dismiss the Illinois action, it is our rightfully acquired jurisdiction that is thereby destroyed. Therefore, the Michigan injunction was in everything but form an order restraining the Illinois court and determining the cases it may properly try.

In determining whether a counterinjunction may be issued to protect our jurisdiction from such interference, we note that such counterinjunctions were authorized by the courts in *Chicago Milwaukee and St. Paul Railway Co.* v.

*Schendel*, 292 Fed. 326, and in *Peterson* v. *Chicago Burlington and Quincy Railway Co.*, 187 Minn. 235, 244 N.W. 823, cited by plaintiff. In the *Schendel case* the Minnesota district court in which plaintiff originally filed an F.E.L.A. action, in order to protect its jurisdiction in that cause, enjoined the defendant railroad from enforcing an Iowa injunction which restrained plaintiff and the witnesses from participating in the Minnesota action. The basis for its decision is stated at p. 334: "The federal court having acquired such jurisdiction had the right to retain and protect it from interference until the determination of the cause. The state had no right to interfere by preventing witnesses from giving testimony and thus practically destroying the power of the federal court to act. If the federal courts under such circumstances cannot protect their jurisdiction they become impotent as instrumentalities of justice."

Similarly, a State court was also held entitled to issue a counterinjunction to protect its prior jurisdiction from interference by the injunctive process of a sister State issued against the plaintiff. (*Peterson* v. *Chicago Burlington and Quincy Railroad Co.*, 187 Minn. 235, 244 N.W. 823.) In the *Peterson case* the Minnesota State court in which plaintiff commenced her F.E.L.A. action ordered the defendant railroad to dismiss its Iowa injunction proceedings restraining the administrator of the estate from maintaining a death action in Minnesota or in any other State.

Although we recognize that these cases involved F.E.L.A. actions and Federal rights, nevertheless, since the determinative factor in the issuance of the counterinjunction in each case was not the nature of the claim asserted, but rather the protection of the court's prior jurisdiction over a transitory action, we regard those cases as relevant authorities. Moreover, they are in accordance with the policy of this State set forth in the *Kavanagh case* at p. 183, proclaiming a person's right "to select such tribunal having jurisdiction as he chooses for the prosecution of his rights,

and the right of the court which first obtains jurisdiction to retain it."

The only relevant authority cited by defendant, denying the power to issue the counterinjunction, is *State ex rel. New York Chicago and St. Louis Railroad Co.* v. *Nortoni,* 331 Mo. 764, 55 S.W.2d 272. Plaintiff therein filed an F.E.L.A. action in the Missouri court, and, after defendant procured an injunction in Indiana restraining plaintiff from prosecuting that Missouri case, plaintiff sought to enjoin defendant from enforcing the Indiana contempt proceedings. The Missouri court, on the basis of *In re Crandall,* 53 F.2d 969, holding that a resident may be enjoined from prosecuting an F.E.L.A. case in other States, reasoned that since the Indiana court had power to entertain the injunction proceeding, its decree was therefore valid and enforcable by contempt proceedings, which should not be enjoined. The Missouri court quoted the applicable rule of law at p. 274: "It is familiar law that where the jurisdiction of a court and the right of a party to prosecute the proceeding therein have once attached, that right cannot be arrested or taken away by proceedings in another court."

In evaluating the decision as precedent, it is apparent first that since *In re Crandall* no longer represents the law, and a State court may not enjoin a resident from prosecuting an F.E.L.A. action in another State or Federal court (*Miles* v. *Illinois Central Railroad Co.,* 315 U.S. 698; *Baltimore and Ohio Railroad Co.* v. *Kepner,* 314 U.S. 44, 86 L. ed. 28; *Pope* v. *Atlantic Coast Line Railroad Co.,* 345 U.S. 379, 97 L. ed. 1094, 73 S. Ct. 749), that Indiana injunction, recognized and protected by the Missouri court, would now be deemed improper. Furthermore, while the Missouri court in the *Nortoni* case enunciated "familiar law," it failed to properly apply that law, and overlooked completely the fact that the jurisdiction of the Missouri court attached even prior to the Indiana injunction proceeding, and according to that "familiar law" the right of the

plaintiff to prosecute that Missouri action should not have been "arrested or taken away by proceedings in another court." Consequently, in the light of the inconsistency in its reasoning, as well as the change in the law of the case on which it is based, the *Nortoni case* is of doubtful value as a precedent.

Moreover, we cannot perceive how the cases cited by defendant holding that Illinois will not enjoin litigation on the merits pending in other States support defendant's contention that the counterinjunction should be denied in the instant case. On the contrary, the Illinois court should be entitled to the same respect for its jurisdiction that it accords the courts of other States, and in the absence of such respect, should be able to protect its jurisdiction from unjustifiable interference by the courts of other States. It is one thing for Illinois to have a policy against enjoining pending litigation on the merits in other States, in the absence of cogent equitable grounds, but it is quite another to stand by impotently and see a litigant, in a case of which the Illinois court has prior jurisdiction of the merits, forced by an out-of-State injunction to dismiss that legitimate cause of action for no reason other than that defendant would prefer to defend the lawsuit elsewhere. Reluctance to be an interloper is not synonymous with abdication.

In the instant case, furthermore, this court would not only be deprived of jurisdiction, but would be required to remain oblivious of defendant's coercive tactics of having plaintiff removed as administratrix of her husband's estate as punishment for proceeding with her Illinois action, and superseded by an administrator who was not only friendly to defendant, but who selected counsel to prosecute the estate's claim against defendant, subject to defendant's approval and direction. Neither the Federal constitution, nor comity requires such abdication.

The Illinois court is not so barren of authority, nor so calcified in its reasoning, as to cower behind the equitable

maxim that "equity acts *in personam,*" and to parrot, as defendant urges, that it is only the litigants and not the jurisdiction of this court that is being interfered with by the Michigan injunction. We are entitled to recognize that their coercion destroys our jurisdiction, and unless we can protect the litigant from such coercion, it is idle to say that we can protect our jurisdiction.

Under our analysis of the authorities, if Illinois were not the appropriate forum to try this, or any other transitory action, the defense of *forum non conveniens* could be interposed, and, if meritorious, the Illinois court would dismiss the case. However, this court need not, and will not, countenance having its right to try cases, of which it has proper jurisdiction, determined by the courts of other States, through their injunctive process. We are not only free to disregard such out-of-State injunctions, and to adjudicate the merits of the pending action, but we can protect our jurisdiction from such usurpation by the issuance of a counterinjunction restraining the enforcement of the out-of-State injunction.

It was therefore error for the trial court to dismiss plaintiff's supplemental complaint and her motion for a counterinjunction, and its order, and the judgment of the Appellate Court affirming it, must be reversed and the cause remanded to the trial court to proceed in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*

Mr. Justice Schaefer, dissenting:

The Michigan injunction appears to have been based (1) upon the venue statute of that State which requires that an action against a railroad be brought in the county of the plaintiff's residence if the railroad's lines traverse that county, and (2) upon allegations as to impossibility of compelling the attendance of witnesses in Illinois and the added expense and inconvenience of trying the action in Illinois. On the authority of *Atchison, Topeka & Santa*

*Fe Railway Co.* v. *Sowers,* 213 U.S. 55, 53 L. ed. 695, and *Tennessee Coal, Iron, & Railroad Co.* v. *George,* 233 U.S. 354, 58 L. ed. 997, defendant concedes that Illinois is not required to give full faith and credit to the Michigan venue statute. It urges, however, that Illinois is required to give full faith and credit to the injunction issued by the Michigan court.

I agree with the majority that in situations like the present one, the useful maxim "equity acts *in personam*" does not tell the full story. By concentrating upon the immediate effect of the injunction it overlooks the purpose for which it was sought and the result that it must achieve if it is to accomplish its purpose. When the Chancellor, in Bacon's day, enjoined the successful party from enforcing the judgment he had obtained at law, the end result was an interference with the processes of the law courts. In the same way, if the Michigan injunction accomplishes its purpose, the operation of the Illinois courts will have been interfered with. It is this inevitable interference with the operation of the courts of sister States that has largely prompted this court's reluctance to authorize the issuance of such injunctions. And I think that this inevitable interference has a bearing upon the claim of such an injunction to recognition under the full-faith-and-credit clause.

So far as I have been able to ascertain, no court has as yet held that such an injunction is entitled to full faith and credit in the sense that the action toward which the injunction is directed must be abated. When such injunctions have been recognized, it has been because the State in which the action is pending has chosen to do so as a matter of comity, and not because it was required to do so by constitutional command. *Allen* v. *Chicago Great Western Railroad Co.* 239 Ill. App. 38; *Odom* v. *Langston,* (W.D. Mo.) 75 F. Supp. 651; *Fisher* v. *Pacific Mutual Life Insurance Co.* 112 Miss 30, 72 So. 846; *Equitable Life Assurance Soc.* v. *Gex's Estate,* 184 Miss. 577, 186 So. 659.

While the courts appear to agree that injunctions like this one are not entitled to full faith and credit, it has been suggested that the injunction is an adjudication of the equitable right of the party seeking it not to be sued in the foreign court, and so is entitled to full faith and credit. (See 33 Yale L.J. 95; cf. Goodrich, Conflict of Laws, 3rd ed., sec. 218.) The Restatement agrees with the view taken by the courts. (Restatement, Conflicts, sec. 450.) In part this view appears to rest upon the ground that to recognize the injunction is to recognize the claim of the enjoining State to exclusive cognizance of a transitory cause of action, which might abridge constitutional privileges. (17 Harv. L.R. 57; 37 Harv. L.R. 157; 72 U. Pa. L.R. 429.) In part it appears to rest upon the ground that to recognize the injunction would "mean in effect that the courts of one State can control what goes on in another." (42 Iowa L.R. 199.) For these reasons I agree with the majority that the Michigan injunction is not entitled to full faith and credit.

But the question in this case goes a step beyond the issue as to full faith and credit. What is here sought is a counter-injunction to restrain the railroad from enforcing the injunction entered by the Michigan court. The difficulties that attend the kind of injunction that the Michigan court entered were stated long ago by Chancellor Walworth: "If this court should sustain an injunction bill to restrain proceedings previously commenced in a sister state, the court of that state might retaliate upon the complainant, who was defendant in the suit there; and, by process of attachment, might compel him to relinquish the suit subsequently commenced here. By this course of proceeding, the courts of different states would indirectly be brought into collision with each other in regard to jurisdiction; and the rights of suitors might be lost sight of in a useless struggle for what might be considered the legitimate powers and rights

of courts." (*Mead* v. *Merritt and Peck* (N.Y. Chan. 1831) 2 Paige 402. What was there said with respect to an initial injunction applies with added force to a counterinjunction. Just as the first injunction sired the second, so the second might sire a third. The ultimate end is not foreseeable.

The place to stop this unseemly kind of judicial disorder is where it begins. The peculiar preference of one State for a particular venue in a single class of cases does not, it seems to me, afford a basis for indirect interference with litigation pending in another jurisdiction. The salutary power of a court of equity to restrain the prosecution of inequitable actions in a foreign court originated and developed upon more substantial considerations. But we are not called upon to review the propriety of the Michigan injunction. Plaintiff did not seek to review it in the Michigan courts. While venue statutes are usually permissive, Michigan's special provision with respect to actions against railroads appears to require that such actions be brought only in a particular county. (*Pere Marquette Railway Co.* v. *Slutz,* 268 Mich. 388, 256 N.W. 458.) The Michigan court applied its statute to a Michigan administrator. Illinois has no connection whatever with the occurrences out of which the administrator's claim arose. The policy of Illinois with respect to the maintenance of foreign wrongful death actions was expressed in section 2 of the Injuries Act. (Ill. Rev. Stat. 1955, chap. 70, par. 2,) which prohibited them. While it is true that this prohibition is no longer effective, the policy that it expressed is also of significance in determining whether or not a counterinjunction should have been issued.

I think that the trial court and the Appellate Court were right, and so I would affirm.

HERSHEY and DAVIS, JJ., join in this dissent.