TABOR & COMPANY, Plaintiff-Appellee, *v.* RICHARD L. McNALL *et al.*, d/b/a McNALL BROS. GRAIN SERVICE, Defendants-Appellants.

(No. 12906;

Fourth District—July 31, 1975.

Heyl, Royster, Voelker & Allen, of Peoria (Larry T. Frantz and William J. Voelker, Jr., of counsel), for appellants.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur (John E. Fick, of counsel), for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Tabor & Company, a Nevada corporation authorized to do business in Illinois, contracted with Richard and Webb McNall, d/b/a McNall Bros. Grain Service, for the purchase and delivery of a large amount of grain. McNall is a Wisconsin corporation, but the grain was to be delivered to the buyer Tabor in La Salle, Illinois. The contracts for this delivery, seven in all, were negotiated by phone between the Wisconsin office of McNall Bros. and the Illinois office of Tabor, and confirmed in writings sent from Tabor to McNall.

McNall performed partially, then defaulted. On June 4, 1974, Tabor filed a complaint on the contract in the circuit court of Macon County, Illinois. On June 18, 1974, McNall filed a suit in the circuit court of Rock County, Wisconsin, admitting default on the contract and seeking to limit its damages. McNall thereafter filed a limited appearance in the Illinois court, contesting that court's jurisdiction on the grounds that McNall had insufficient business contracts with Illinois to support such jurisdiction. The accompanying motion to quash service of process was denied August 2, 1974.

On August 27, 1974, Tabor petitioned the Illinois court to enjoin McNall from proceding further with the suit in Wisconsin. At the same time, Tabor filed a petition for writ of prohibition in the Supreme Court of Wisconsin in an attempt to arrest the progress of the circuit court action there. On September 10, 1974, the Supreme Court of Wisconsin denied the request for a writ of prohibition.

Finally, on October 11, 1974, the Illinois court issued a writ of temporary injunction restraining McNall from proceeding further with the action in Rock County, Wisconsin. The order noted that there was no just reason for denying its enforcement or appeal. The McNalls nevertheless proceeded with their action in the Wisconsin court which proceeded to a verdict on October 16, 1974. On November 8, Tabor filed a petition for rule to show cause why McNall should not be held in contempt of court for violating the temporary injunction. The McNalls then appealed the order enjoining them from proceeding in Wisconsin, contending that the Illinois court had no jurisdiction over them in the first instance, that Tabor was estopped by the unfavorable verdict of the Wisconsin Supreme Court on its petition for a writ of prohibition from

seeking an injunction on the same matter in Illinois, and that the trial court was in error in enjoining them from pursuing the Wisconsin action.

■■ In regard to the McNalls' first contention, we find that the company clearly performed acts sufficient to constitute the transaction of business within the State of Illinois. The contracts were negotiated by way of phone calls between Wisconsin and Illinois and the confirmation of the contracts was sent from Illinois to Wisconsin. Moreover, performance of the contract was to occur in Illinois, since delivery of the grain was to be at La Salle, Illinois. This court has held that similar contracts justified personal jurisdiction in several recent decisions. See, for instance, *First Professional Leasing Co. v. Rappold*, 23 Ill.App.3d 420, 319 N.E.2d 324, and *Willis v. West Kentucky Feeder Pig Co.*, 132 Ill.App.2d 266, 265 N.E.2d 899.

■■ The McNalls' second contention, that of estoppel by verdict, was waived when they failed to raise the issue in the trial court. *Kravis v. Smith Marine, Inc.*, 60 Ill.2d 141, 324 N.E.2d 417.

The McNalls' third and final contention is that the trial court judge issued the temporary injunction solely to protect the earlier acquired jurisdiction of the Illinois court, and that such is an insufficient justification for enjoining a foreign court proceeding. The trial court made no finding that the Wisconsin proceeding would be likely to result in fraud or oppression, or that any equity appeared to require intervention. On the contrary, the trial court specifically found that the McNalls had filed suit in Wisconsin to protect themselves, not to harrass Tabor.

The only reason for intervention suggested by the trial court is a fear that Wisconsin law might not afford the Illinois defendant the protection he deserves:

"THE COURT: We are all aware, and we are getting more first-hand knowledge all the time, apparently as a result of the—I hesitate to use the word, but the socialistic background of the State of Wisconsin, the Farmers' Labor Party and the LaFollettes and all the rest, they do have some pretty strange laws up there that I sometimes fail to comprehend, as witness this law suit where a plaintiff can come in and state under oath that he has breached his contract but I want my damages mitigated, it seems a little foreign to our experience here."

■■ Such reasoning does not constitute sufficient basis for enjoining prosecution of a foreign suit:

"It is not enough that there may be reason to anticipate a difference of opinion between the two courts, and that the courts of the foreign State would arrive at a judgment different from the decisions of the courts in the State of the residence of the parties.

[Citation.] It is not inequitable for a party to prosecute a legal demand against another in any forum that will take legal jurisdiction of the case, merely because that forum will afford him a better remedy than that of his domicile. To justify equitable interposition it must be made to appear that an equitable right will otherwise be denied the party seeking relief. [Citation.]"

(*Royal League v. Kavanagh*, 233 Ill. 175, 183, 84 N.E. 178, 181.) Nor is it sufficient that the suit in Illinois was instituted before the suit in Wisconsin:

"A party has the legal right to bring his action in any court which has jurisdiction of the subject matter and which can obtain jurisdiction of the parties. Should he begin two suits within the same jurisdiction, the pendency of the suit first brought may be pleaded in abatement of the later proceeding. This is not true of suits brought in different jurisdictions upon the same cause of action. The mere pendency of a suit in a sister State or in a court of the United States cannot be pleaded in abatement of a proceeding in a State court.   *   *   *   [I]t is only where it clearly appears that the prosecution of an action in a foreign State will result in a fraud, gross wrong or oppression, that a court of equity will interfere with the general right of a party to press his action in any jurisdiction which he may see fit and in as many of them as he chooses and restrain him from the prosecution of such a suit." *Illinois Life Insurance Co. v. Prentiss*, 277 Ill. 383, 387, 115 N.E. 554, 556.

The trial judge did not cite, nor does the record disclose, any facts to show why an injunction is necessary to avert "fraud, gross wrong or oppression." Consequently, it was error to enjoin the McNalls from proceeding in a foreign court.

■■ Finally, Tabor contends that McNalls, by violating the injunction of the circuit court of Illinois, deprived themselves of the "clean hands" required from one who seeks equity. We have been advised of no authority which would bar them from seeking reversal of the order they disobeyed. The rule to show cause why they should not be cited for contempt is not before this court.

The circuit court erred in the issuance of the injunction.

Reversed.

SIMKINS, P. J., and TRAPP, J., concur.