NATIONAL HOCKEY LEAGUE, Plaintiff-Appellee, *v.* INTERMART, INC., *et al.*, Defendant-Appellant.

First District (3rd Division)   Nos. 84—1595, 84—1899 cons.

Opinion filed August 31, 1984.—Rehearing denied November 2, 1984.

Jenner & Block, of Chicago, and Shearman & Sterling, of New York, New York (Jerold S. Solovy, Howard R. Barron, Robert F. Dobbin, and Robert J. Hausen, of counsel), for appellant.

Schiff, Hardin & Waite, of Chicago (W. Donald McSweeney, Barry S. Alberts, and William M. Hannay, of counsel), for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

On April 13, 1984, the plaintiff, the National Hockey League (NHL) filed a complaint for declaratory judgment in the circuit court of Cook County against the defendant, Intermart, Inc. (Intermart), an Ontario corporation carrying on business as Canadian Sports Network (CSN), concerning the rights of the parties under an agreement. According to the complaint, the NHL is a voluntary unincorporated association which promotes professional hockey for the mutual benefit of its member hockey clubs, consisting of 14 clubs in the United States and seven clubs in Canada. CSN is a division of Intermart. On June 25, 1984, six of the seven NHL Canadian member clubs and CSN filed a statement of claim based on the alleged breach of the agreement in the supreme court of Ontario, Canada, against Carling O'Keefe Breweries of Canada, Ltd. (Carling O'Keefe), the principal officers of the NHL, the 14 NHL United States member clubs and Le Club de Hockey Les Nordiques 1979 (Quebec Nordiques), one of the Canadian member clubs. The action sought injunctive, declaratory and monetary relief. In the trial court and in its brief on this appeal, CSN stated that the NHL was not made a party to the Ontario lawsuit because a voluntary association may not sue or be sued under Canada law.

On June 26, 1984, the NHL filed in the circuit court of Cook County a motion for a temporary restraining order (TRO) and prelimi-

nary injunction prohibiting CSN from maintaining the prosecution of the Ontario action and from filing or prosecuting any other action arising out of the agreement. No evidentiary hearing on the motion was held. Following oral argument, on June 27, 1984, the trial court granted the motion and entered a TRO for a period of 10 days enjoining CSN from maintaining the prosecution of the Ontario action and from filing or prosecuting any other action arising out of the agreement in any court other than the circuit court of Cook County. The trial court has extended the TRO several times, and it has now been extended to September 17, 1984, the date currently set for trial on this matter. CSN's motion to vacate or dissolve the TRO was denied on July 6, 1984. CSN filed these interlocutory appeals pursuant to Supreme Court Rule 307(a) (87 Ill. 2d R. 307(a)). The issues presented for review are: (1) whether the trial court abused its discretion in entering the temporary restraining order; (2) whether the trial court abused its discretion in extending the temporary restraining order for more than 82 days without an evidentiary hearing; and (3) whether the trial court abused its discretion in refusing to require the NHL to give bond.

The contract in dispute, called the "Trans-Border Agreement" (TBA), was executed on July 1, 1982, by CSN, a division of Intermart, and by the NHL on behalf of its member clubs. It provided, in pertinent part, that the NHL Canadian member clubs granted to CSN the exclusive right to televise the NHL United States member clubs' home hockey games throughout Canada during the 1982-1983 and 1983-1984 seasons, subject to limited border protection and certain previously-granted local broadcast rights. In exchange, CSN would grant certain reciprocal broadcast rights on behalf of the Canadian clubs and pay to the NHL, as agent for, and for distribution to, the NHL United States member clubs, $2,178,000 for 1982-1983 and an increase in accordance with the larger of two agreed-upon formulas for 1983-1984. Regarding negotiation of a new TBA for the 1984-1985 season, the contract provided as follows:

> "5. (a) Commencing no later than April 1, 1984, CSN and NHL will negotiate diligently in good faith with respect to terms and conditions on which CSN and NHL may enter into a new Trans-Border Agreement. Provided that on or before April 1, 1984, CSN has made an irrevocable 'Minimum Offer' (as defined herein) to NHL for the 1984-85 season, NHL will not enter into an agreement with any third party in the 1984-85 season, for the same rights granted to CSN for the 1983-84 season, without giving CSN a right of first refusal to match the offer made by such third party whose offer shall be on the same terms and

conditions as the 'Minimum Offer,' except for the monetary amount. Such right of first refusal shall be exercised or lost by CSN ten business days from the date CSN receives written notice thereof from NHL, which notice must be given no later than thirty days after CSN has made such 'Minimum Offer' to NHL. The 'Minimum Offer' to be made by CSN for the 1984-85 season, to qualify for the said right of first refusal, shall be ten percent (10%) higher than the amount CSN has agreed to pay herein, for all of the same rights as granted to CSN in the 1983-84 season (and on the same terms and conditions except as provided in 5(b) below), and will terminate by July 1, 1984.

(b) CSN will use its best efforts to continue in the future to acquire and control the rights referenced in paragraph 1(b) hereof. Should it fail to do so, however, and should all Canadian Member Clubs fail to agree to the Agreement as set forth in Exhibit A hereof, then, to the extent necessitated by such circumstances, CSN shall be relieved of the responsibility of providing broadcast rights to games played in certain Canadian cities, and CSN's exclusive broadcast rights shall be waived to the extent necessary for the NHL and/or any U.S. Member Club to grant broadcast rights in exchange for the acquiring of such rights to games played in such Canadian cities."

The complaint alleged that on December 19, 1983, CSN made a minimum offer to the NHL for exclusive 1984-1985 broadcast rights, even though it knew that one of the Canadian clubs had not agreed to grant reciprocal broadcast rights for the 1984-1985 season. That club was Le Club de Hockey Les Nordiques 1979 (Quebec Nordiques), owned by Carling O'Keefe Breweries of Canada, Ltd. (Carling O'Keefe). On or about January 23, 1984, the NHL United States member clubs decided to negotiate new agreements with CSN and others on a nonexclusive basis, since they were aware that CSN would be unable to provide United States broadcast rights to all Canadian member clubs' home games for the 1984-1985 season. By telephone on the same date, the NHL so advised CSN, and invited CSN to submit a proposal for such a nonexclusive agreement. On or about January 30, 1984, a committee representing the NHL's United States member clubs entered into an agreement with Carling O'Keefe which granted Carling O'Keefe the nonexclusive right to broadcast United States home hockey games throughout Canada. On the same date, the NHL committee advised CSN and the principal sponsor of CSN's broadcasts, Molson Breweries of Canada, Ltd. (Molson), that the committee desired to negotiate a similar nonexclusive agreement with CSN. At

CSN's request, the NHL committee agreed to extend the deadline for a CSN proposal as well as to refrain from negotiating with any party other than Molson or Carling O'Keefe regarding Canadian broadcast rights.

By letter dated March 20, 1984, counsel for CSN, Molson and the Canadian Broadcasting Corporation informed the NHL that they intended to enforce what they considered to be CSN's exclusive broadcast rights for 1984-1985 under the TBA.

On April 13, 1984, the NHL filed this action for judgment declaring that the TBA did not require the NHL to grant to CSN exclusive Canadian broadcast rights or to enter into any agreement with CSN for the 1984-1985 season; that the TBA did not prohibit the NHL from entering into nonexclusive broadcast agreements with other parties; that the TBA did not grant to CSN any broadcast rights for the 1984-1985 season; that CSN did not make a valid minimum offer; that the NHL's nonexclusive agreement with Carling O'Keefe would be permissible if CSN were unable to grant to the NHL United States member clubs the broadcast rights to the Quebec Nordiques' home games; that the TBA required diligent good-faith negotiations by CSN regarding the 1984-1985 season and CSN failed to meet such requirement; and that the NHL met its obligation to negotiate diligently in good faith by inviting CSN to propose a nonexclusive agreement.

On May 3, 1984, CSN filed a special and limited appearance and objection to summons and personal jurisdiction. The trial court overruled the objection. On May 31, 1984, CSN filed a motion to dismiss the action based on *forum non conveniens*. The trial court denied the motion on June 29, 1984. CSN's subsequent petition in this court for leave to appeal the denial of its motion was denied.

On June 27, 1984, the trial court granted NHL's motion for a TRO and stated the following reasons for granting the motion:

"6. The Canadian suit asserts, *inter alia*, claims for injunctive and other relief based upon the aforesaid Trans-Border Agreement. As the Canadian suit relates to defendant, the issues are substantially the same as those in the instant cause of action, and resolution of the issues before this Court would resolve the issues regarding the interpretation of the Trans-Border Agreement pending in Canada.

7. Counsel for defendant in the instant case does not represent defendant in the Canadian action.

8. It appears that further prosecution of the Canadian action would unduly interfere with the progress of the prior-instituted action now before this Court.

9. While no harm to defendant's interests would appear to result, and no costs or damages will be suffered by defendant, from the issuance of a temporary restraining order, plaintiff may be harmed by actions taken by defendant in Canada if no such other is issued, and no bond is therefore needed."

On June 29, 1984, CSN filed an answer to the complaint for declaratory judgment. In addition, CSN filed a counterclaim alleging that it was granted the right under the TBA to extend the agreement for the 1984-1985 season; that the TBA gave CSN a right of first refusal with respect to the 1984-1985 season; that the NHL did not give Intermart notice within 30 days of its minimum offer that a third-party offer had been received; that after the minimum offer, the NHL informed Intermart that $9 million would be required to renew the TBA, even though no third party had offered $9 million for the broadcast rights; and that the NHL had breached the TBA by refusing to negotiate diligently and in good faith with CSN regarding a renewal of the TBA. The counterclaim sought judgment dismissing the complaint; ordering the NHL to specifically perform the TBA by renewing the TBA with CSN for the 1984-1985 season; enjoining the NHL from performing the purported agreement among the NHL United States member clubs and Carling O'Keefe and from granting the 1984-1985 Canadian broadcast rights to anyone other than CSN; and awarding damages.

On this interlocutory appeal, CSN contends that the trial court abused its discretion in entering the TRO. CSN argues that the TRO was entered without any legal basis and should be reversed. The bare fact of prior jurisdiction is not sufficient, absent equitable considerations, to provide a basis to enjoin a suit in a foreign jurisdiction. (*Illinois Life Insurance Co. v. Prentiss* (1917), 277 Ill. 383, 115 N.E. 554; *Lowe v. Norfolk & Western Ry. Co.* (1981), 96 Ill. App. 3d 637, 421 N.E.2d 971.) It is only where it clearly appears that the prosecution of an action in a foreign jurisdiction will result in fraud, gross wrong or oppression that a court of equity will interfere with the general right of a party to press his action in any jurisdiction which he may see fit and in as many of them as he chooses and restrain him from the prosecution of such a suit. (*Illinois Life Insurance Co. v. Prentiss* (1917), 277 Ill. 383, 115 N.E. 554; *Tabor & Co. v. McNall* (1975), 30 Ill. App. 3d 593, 333 N.E.2d 562.) A subsequently instituted action will be enjoined if further prosecution appears to be oppressive, vexatious, annoying, or harassing, or appears to cause undue interference with the progress of a prior-instituted local action. (*Block & Co. v. Storm Printing Co.* (1976), 40 Ill. App. 3d 92, 351 N.E.2d 271.) Mere inconvenience and expense of defending a foreign action does not con-

stitute a manifest wrong or injustice adequate to justify an injunction; however, where complete relief can be had where litigation is pending, the institution of foreign proceedings will be regarded as vexatious harassing of the opposite party. *Lowe v. Norfolk & Western Ry. Co.* (1981), 96 Ill. App. 3d 637, 421 N.E.2d 971; *Wells v. Wells* (1976), 36 Ill. App. 3d 91, 343 N.E.2d 215.

In *Tabor & Co. v. McNall* (1975), 30 Ill. App. 3d 593, 333 N.E.2d 562, a dispute arose out of a contract for the sale of grain. The buyer filed a complaint in Illinois; subsequently, the seller filed an action in Wisconsin. The Illinois trial court issued a TRO restraining the seller from proceeding with the Wisconsin lawsuit. The appellate court ruled that the issuance of the injunction was error and reversed the order. The trial court had specifically found that the Wisconsin action was filed to protect the seller, not to harass the buyer; there was no finding that the Wisconsin proceeding would be likely to result in fraud or oppression, or that equity appeared to require intervention. The only reason suggested for intervention was a fear that Wisconsin law might not afford the buyer the protection he deserved. Neither that reasoning nor the fact that the Illinois suit was instituted first constituted sufficient basis to enjoin prosecution of the Wisconsin action.

In *Sperry Rand Corp. v. Sunbeam Corp.* (7th Cir. 1961), 285 F.2d 542, while a trademark infringement action was pending in the U.S. district court for the Northern District of Illinois, the plaintiff's affiliate and exclusive licensee in Germany filed an action for patent and trademark infringement against the defendant's affiliate in Frankfurt. The district court found such conduct on the part of the plaintiff and its affiliates to be vexatious and harassing to defendant, and entered an injunction enjoining the plaintiff and its affiliates from proceeding with the Frankfurt action or filing any other such action. In reversing the order, the Seventh Circuit ruled that as it did not appear that disposition of the cause pending in the district court would dispose of the Frankfurt case or that the latter suit for trademark infringement would duplicate the former, there was no evidence to support a finding of vexatious or harassing litigation.

In the instant case, the record does not disclose that the Canadian action will be likely to result in fraud, gross wrong or oppression, or that further prosecution thereof appeared to be oppressive, vexatious, annoying, or harassing, or to cause undue interference with the prior-instituted case at bar. Moreover, although the Canadian lawsuit is based on the TBA, it involves some parties who are not parties to the instant action, and each plaintiff seeks different injunctive and monetary relief. Therefore, complete relief cannot be had in the present

action.

■ Without an evidentiary hearing, the trial court determined that it was necessary to enjoin the Canadian proceedings for three main reasons: (1) the issues are substantially the same and their resolution here would resolve the issues regarding the interpretation of the TBA in the Canadian action; (2) counsel for CSN here does not represent CSN in the Canadian action; and (3) it appears that further prosecution of the Canadian action would unduly interfere with the progress of the instant action. The first two reasons do not satisfy the Illinois standards for enjoining foreign proceedings. As to the third reason, the trial judge did not cite, nor does the record disclose, any facts to show that further prosecution of the Canadian action would cause any undue interference with the instant case.

■ The NHL argues that it needed only to raise a "fair question" that the TRO was appropriate under *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1983), 94 Ill. 2d 535, 447 N.E.2d 288, and that it adequately did so. We disagree. After thoroughly examining the record, we cannot see even a "fair question" regarding the appropriateness of the TRO. As the trial court abused its discretion in granting NHL's motion for a temporary restraining order, we reverse.

CSN next contends that the trial court abused its discretion in extending the temporary restraining order for more than 82 days without an evidentiary hearing. Since we have reversed the granting of NHL's motion for a temporary restraining order, we also hold that the trial court abused its discretion in extending the temporary restraining order. Therefore, it is not necessary to address this issue.

CSN further argues that the trial court abused its discretion in refusing to require the NHL to give bond in the amount of $5 million. Since we have reversed the granting of the temporary restraining order and the extensions of the temporary restraining order, it is not necessary to address this issue.

For the foregoing reasons, the order of the circuit court of Cook County is reversed.

Reversed.

RIZZI, P.J., and McNAMARA, J., concur.