RICHARD PFAFF, Plaintiff, v. CHRYSLER CORPORATION *et al.*, Defendants (Chrysler Corporation, Third-Party Plaintiff-Appellant; Skyline Industrial Service, Inc., Third-Party Defendant-Appellee; J.P. Cullen & Sons, Inc., Third-Party Defendant).

Second District No. 2—90—0909

Opinion filed February 11, 1991.—Rehearing denied March 19, 1991.

William R. Power and Stephen J. Tasch, both of Pappas, Power & Marcus, of Chicago (Debra K. Marcus, of counsel), for appellant.

Loretta M. Griffin, of O'Connor, Schiff & Myers, Michael D. Fisher, of Goldberg, Fohrman & Weisman, Ltd., and Kevin R. Sido, of Hinshaw & Culbertson, all of Chicago, and Douglas Pomatto, of Heyl, Royster, Voelker & Allen, of Peoria (Patrick D. Riley, of counsel), for appellee.

PRESIDING JUSTICE REINHARD delivered the opinion of the court:

Defendant and third-party plaintiff, Chrysler Corporation (Chrysler), brings this interlocutory appeal from an order of the circuit court of Boone County enjoining Chrysler from proceeding with an indemnity action against third-party defendant, Skyline Industrial Service, Inc. (Skyline), which it filed in the State of Michigan. The trial court determined that the Michigan action, which was filed after the Illinois court ruled that Chrysler's indemnity actions would not lie in Illinois, represented an attempt by Chrysler to evade the prior jurisdiction of the circuit court.

At issue on appeal is whether the trial court properly enjoined Chrysler from proceeding with the out-of-State action.

The instant litigation commenced on July 2, 1987, with the filing of a complaint in the circuit court of Cook County by plaintiff, Richard Pfaff, an employee of Skyline, against Chrysler and J.S. Alberici Construction Company, Inc. (Alberici), seeking to recover for personal injuries sustained at Chrysler's Belvidere, Illinois, plant. Count I of plaintiff's complaint sought recovery under the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*), and count II was based on allegations of negligence. On September 21, 1987, Chrysler filed a *forum non conveniens* motion seeking transfer of the cause to the circuit court of Boone County. The circuit court of Cook County granted Chrysler's motion and ordered the cause transferred to the circuit court of Boone County.

On June 2, 1988, plaintiff filed his first amended complaint adding J.P. Cullen & Sons, Inc., and J.P. Cullen & Son Construction Corp. (Cullen) as defendants. By an agreed order entered August 25, 1988, plaintiff voluntarily dismissed its complaint insofar as it sought recovery against Alberici.

On October 14, 1988, Chrysler filed a third-party complaint

against Skyline and Cullen. The first eight counts of the third-party complaint were against Skyline, with whom Chrysler had entered into a series of contracts for various construction and repair jobs. Count I sought recovery from Skyline under a theory of common-law indemnity; count II sought recovery pursuant to the Contribution Act (Ill. Rev. Stat. 1987, ch. 70, par. 302); and counts III, IV, and VI through IX were based on contractual indemnity provisions and sought to compel Skyline to indemnify Chrysler for any judgment against it and for the costs incurred in defending against plaintiff's suit. Count VI specifically alleged that Skyline breached a contractual obligation to purchase liability insurance which would hold Chrysler harmless. Counts X through XVII were against Cullen. There was no count V in the third-party complaint.

On December 29, 1988, Skyline filed both its answer to count II of Chrysler's third-party complaint and a motion to dismiss the remaining counts against it. Citing *Thatcher v. Commonwealth Edison Co.* (1988), 123 Ill. 2d 275, 527 N.E.2d 1261, Skyline moved to dismiss count I of the third-party complaint on the ground that common-law indemnity is no longer recognized in Illinois. Again citing *Thatcher* and the statutory prohibition against indemnity provisions in construction contracts (Ill. Rev. Stat. 1987, ch. 29, par. 61), Skyline also moved to dismiss counts III through IX on the basis that an action for either implied or contractual indemnification is not available in Illinois. Skyline additionally moved to dismiss the breach of contract portion of count VI on the basis that Chrysler waived any claim it had against Skyline for its alleged failure to purchase insurance. Chrysler responded by contending that *Thatcher* does not foreclose all common-law indemnity actions and that the contractual indemnity provisions are valid under Michigan law, which was to govern the contracts.

A hearing on Skyline's motion to dismiss the implied and contractual indemnity provisions of Chrysler's third-party complaint was held on June 29, 1989. The trial court first held that count I would be dismissed because Illinois does not recognize actions for common-law indemnity. The court then ruled that, pursuant to *Donaldson v. Fluor Engineers, Inc.* (1988), 169 Ill. App. 3d 759, 523 N.E.2d 1113, the contractual indemnity provisions would be governed by Illinois law rather than Michigan law. The court concluded that the remaining counts at issue, which were based on contractual indemnification provisions, were void under Illinois law and would be stricken. The court stated that only count VI, which dealt with an alleged breach of Skyline's contractual obligation to purchase insurance, might be curable.

The trial court entered an order dismissing count I and counts III through IX of the third-party complaint and allowing Chrysler 28 days to file an amended complaint. The court specified that its order of dismissal was without prejudice to refiling an amended complaint, but it ruled that the validity of the indemnity counts would not be relitigated.

On July 28, Chrysler filed an amended third-party complaint which again advanced eight counts against Skyline based on common-law indemnity, contractual indemnity and contribution. Skyline filed a motion to dismiss count I and counts III through IX of the amended third-party complaint because of Illinois' policy against indemnity and indemnity agreements, the same basis upon which the trial court had earlier dismissed the corresponding counts of the original third-party complaint. Without responding to Skyline's motion, Chrysler filed a second amended third-party complaint. Count I of the second amended third-party complaint sought contribution from Skyline, and count II sought contribution from Cullen. No indemnity counts were included in Chrysler's second amended third-party complaint.

On May 17, 1990, Skyline filed a motion asking the court to enter an order pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) declaring that there was no just reason to delay enforcement or appeal of the court's June 29, 1989, order dismissing the indemnity counts of Chrysler's original third-party complaint. The motion set forth the following additional allegations regarding Chrysler's conduct following the filing of its first amended third-party complaint:

"3. Subsequent to SKYLINE'S filing its Motion to Dismiss CHRYSLER'S Amended Third Party Complaint, SKYLINE'S attorneys were contacted by CHRYSLER'S attorneys who stated that they will be withdrawing CHRYSLER's Amended Third Party Complaint and would be filing a Second Amended Third Party Complaint solely under the Illinois Contribution Act. ***

4. It is apparent that by CHRYSLER'S filing of a Second Amended Complaint that CHRYSLER has conceded that there is no basis for recovery under the previously stricken theories set forth in its original and first amended pleadings. ***

5. Despite this Court's order and its own concession, on February 20, 1990, CHRYSLER filed a cause of action against SKYLINE in Wayne County Circuit Court, State of Michigan, docket No. 90—004448CK, seeking recovery against SKYLINE under the same causes of action that were previously rejected by this Court."

Attached to the motion was a copy of the complaint filed by Chrysler in the Michigan action. Count I of that complaint alleged that Skyline breached various contractual duties to indemnify Chrysler, and count II sought declaratory relief regarding the parties' contractual rights and obligations.

Chrysler's response to Skyline's motion asserted that no Rule 304(a) finding could be made because the counts at issue were no longer before the court.

On June 21, 1990, Skyline filed an amended motion asking the court to enjoin Chrysler from proceeding outside of Boone County with any action related to the instant proceedings. Chrysler responded that the order dismissing the indemnity counts of its third-party complaint was not final and did not preclude Chrysler from seeking contractual relief against Skyline in a Michigan court. In a supplemental response to Skyline's motion, Chrysler noted that Skyline had appeared before the Michigan court and filed a motion for summary judgment and/or dismissal of Chrysler's action there because of the pendency of the Illinois action and under the doctrine of *forum non conveniens*. Chrysler's motion noted that the Michigan court found it had jurisdiction over the action and denied Skyline's motion.

A hearing on Skyline's motion in the Boone County circuit court was held on July 19, 1990. At that hearing, counsel for Skyline argued that Chrysler was attempting to refile its indemnification counts in Michigan after having received an unfavorable ruling on the same issues in Illinois. Skyline characterized such action as "forum shopping." Chrysler noted that the circuit court's order of dismissal had granted Chrysler leave to amend its pleadings. Chrysler contended that its indemnity counts "were withdrawn or amended out of Boone County and filed in Michigan" and that there was "no contractual claim pending" before the Boone County court.

After listening to argument, the court issued an order enjoining Chrysler from proceeding with the Michigan action based on the court's "inherent authority to protect its own proceedings and to protect litigants before it from multiple lawsuits on the same issues." Chrysler now appeals from this order pursuant to Supreme Court Rule 307(a) (134 Ill. 2d R. 307(a)).

On appeal, Chrysler contends that the trial court should not have enjoined the subsequently filed Michigan action absent a showing of fraud, gross wrong or oppression. Skyline responds that, because Chrysler first invoked the jurisdiction of the Illinois courts voluntarily by filing its third-party action, it should be enjoined from selecting a

different forum after having received an unfavorable ruling in Illinois.

■ We undertake our analysis agreeing with Skyline's statement that, under the circumstances, the trial court's dismissal of Chrysler's indemnity claims constitutes a substantive ruling on the merits. We note that, although Chrysler's entire third-party complaint was dismissed without prejudice to refiling an amended pleading, the trial court made it clear that the indemnity counts did not and could not state a cause of action and should be referenced in any new third-party complaint merely to preserve Chrysler's right to appeal the ruling. (See *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 153-54, 449 N.E.2d 125.) Chrysler's failure to include the indemnity counts in its second amended third-party complaint potentially bars only its right to appeal the dismissal of these counts but does not alter the fact that the trial court ruled on the merits of these counts.

■ It is clear that an Illinois court has the power to restrain a person over whom it has jurisdiction from bringing a suit in a foreign State. (*James v. Grand Trunk Western R.R. Co.* (1958), 14 Ill. 2d 356, 368, 152 N.E.2d 858; *Royal League v. Kavanagh* (1908), 233 Ill. 175, 183, 84 N.E. 178.) Where such an injunction issues, it operates solely against the party and does not purport to direct or control the foreign court.

■ In *Royal League v. Kavanagh* (1908), 233 Ill. 175, 84 N.E. 178, the Royal League, a fraternal insurance society organized under Illinois law, filed an action in Illinois seeking to have its rights under an insurance contract with Kavanagh, an Illinois resident, determined in Illinois. The Royal League also asked the Illinois court to enjoin Kavanagh from bringing a similar action on the contract in the State of Missouri. (*Kavanagh*, 233 Ill. at 178-81, 84 N.E. at 179-80.) The supreme court determined that Kavanagh should not be enjoined from bringing the Missouri action:

> "[T]he court will not restrain the prosecution of a suit in a foreign jurisdiction unless a clear equity is presented requiring the interposition of the court to prevent a manifest wrong and injustice. It is not enough that there may be reason to anticipate a difference of opinion between the two courts ***. [Citation.] It is not inequitable for a party to prosecute a legal demand against another in any forum that will take legal jurisdiction of the case, merely because that forum will afford him a better remedy than that of his domicile. To justify equitable interposition it must be made to appear that an equitable right will otherwise be denied the party seeking relief. [Citation.]

A person has the right to select such tribunal having jurisdiction as he chooses for the prosecution of his rights, and the court which first obtains jurisdiction will retain it. Such jurisdiction cannot be defeated because the defendant may prefer another tribunal in which he supposes the decision will be more favorable to him." *Kavanagh*, 233 Ill. at 183-84, 84 N.E. at 181.

In *Illinois Life Insurance Co. v. Prentiss* (1917), 277 Ill. 383, 115 N.E. 554, Prentiss filed an action in the circuit court of Cook County to recover on an insurance policy issued by Illinois Life. Both parties were Illinois residents, and the circuit court of Cook County had full power to adjudicate all questions between them regarding the insurance policy. Prentiss also asked the court to enjoin Illinois Life from following through on its threat to file a similar action in the State of Missouri. (*Prentiss*, 277 Ill. at 384-85, 115 N.E. at 555.) Once again, the supreme court declined to enjoin the filing of the second suit in another State:

"[T]he prosecution of a suit in a foreign jurisdiction will not be restrained unless a clear equity is presented requiring the interposition of the court to prevent a manifest wrong and injustice. A party has the legal right to bring his action in any court which has jurisdiction of the subject matter and which can obtain jurisdiction of the parties. Should he begin two suits within the same jurisdiction, the pendency of the suit first brought may be pleaded in abatement of the later proceeding. This is not true of suits brought in different jurisdictions upon the same cause of action. The mere pendency of a suit in a sister State or in a court of the United States cannot be pleaded in abatement of a proceeding in a State court. While the doctrine announced in the *Kavanagh case* \*\*\* is now applied in every jurisdiction in the Union, this power is sparingly exercised, and *it is only where it clearly appears that the prosecution of an action in a foreign State will result in a fraud, gross wrong or oppression*, that a court of equity will interfere with the general right of a party to press his action in *any jurisdiction which he may see fit and in as many of them as he chooses* and restrain him from the prosecution of such a suit.

\*\*\* *The bare fact that a suit on this policy has been begun and is now pending in this State, in the absence of equitable considerations, furnishes no ground to enjoin [Prentiss] from suing his claim in a foreign jurisdiction*, although the cause of action is the same and arises out of the contract of insurance

involved in the litigation in the circuit court of Cook county. [Citations.] Before the prosecution of the second suit in a foreign jurisdiction will be enjoined the propriety and necessity of confining the litigation to the court in which the first suit is instituted must appear. *That it may be inconvenient for [Illinois Life] to go to a foreign State to try the suit, or that the maintenance of two suits will cause double litigation and added expense, is insufficient cause for an injunction* against prosecuting the suit proposed to be brought in the State of Missouri and does not justify any interference by a court of equity." (Emphasis added.) *Prentiss*, 277 Ill. at 387-88, 115 N.E. at 556-57.

Clearly, neither *Kavanagh* nor *Prentiss* established different criteria for the exercise of the State's injunctive authority depending on whether the Illinois action was filed before or after the out-of-State action. However, Skyline contends that the supreme court did, in fact, adopt a dual standard model of analysis, dependent upon where the first action was filed, in *James v. Grand Trunk Western R.R. Co.* (1958), 14 Ill. 2d 356, 152 N.E.2d 858.

In *James*, the nonresident plaintiff instituted a wrongful death action in Illinois, based on a Michigan statute, against the defendant railroad. The railroad subsequently obtained an injunction from a Michigan court restraining the plaintiff from proceeding with the Illinois action. The plaintiff then sought a counterinjunction from the Illinois court to prevent the railroad from enforcing the Michigan injunction. (*James*, 14 Ill. 2d at 358, 152 N.E.2d at 860.) The supreme court recognized that the question presented was one of first impression in Illinois. *James*, 14 Ill. 2d at 361, 152 N.E.2d at 861.

The court began its analysis by noting that, although a court of equity has the power to restrain persons within its jurisdiction from instituting or proceeding with foreign actions, the exercise of such power has been deemed a matter of great delicacy. (*James*, 14 Ill. 2d at 363, 152 N.E.2d at 861.) In exploring the question of whether Illinois should recognize the Michigan injunction, the supreme court noted Illinois' policy on the exercise of the injunctive power:

"Illinois has consistently followed the course of refusing to restrain the prosecution of a prior instituted action pending in a sister State unless a clear equity is presented requiring the interposition of the court to prevent a manifest wrong and injustice; and neither a difference of remedy afforded by the domicile and the forum nor mere inconvenience and expense of defending will constitute grounds for such an injunction. [Cita-

tions.] That course is based on the policy that after suits are commenced in one State, it is inconsistent with inter-State harmony if their prosecution be controlled by the courts of another State." (*James*, 14 Ill. 2d at 363, 152 N.E.2d at 862.)

The court held that it would not recognize Michigan's injunction of a previously instituted Illinois action which was still pending. *James*, 14 Ill. 2d at 363-64, 152 N.E.2d at 862-63.

The court then proceeded to address the separate question of whether it should issue a counterinjunction prohibiting the railroad from enforcing the Michigan injunction. The court concluded that "a court which first obtains jurisdiction of the merits of a cause should be permitted to retain it until the cause is finally adjudicated, without interference from the courts of other States." (*James*, 14 Ill. 2d at 366, 152 N.E.2d at 864.) The court noted that, if the Michigan injunction were enforced against the plaintiff, she would be forced to dismiss the Illinois action or face "imprisonment and other coercive tactics." (*James*, 14 Ill. 2d at 367, 152 N.E.2d at 864.) The supreme court held that a counterinjunction should issue against the railroad, stating that "the Illinois court should be entitled to the same respect for its jurisdiction that it accords the courts of other States, and in the absence of such respect, should be able to protect its jurisdiction from unjustifiable interference by the courts of other States." *James*, 14 Ill. 2d at 371, 152 N.E.2d at 866.

Some appellate court cases following *James* have interpreted that case as establishing a dual standard of analysis for determining whether the State's injunctive power should be exercised. These cases hold that, under *James*, an action previously filed in another State will not be enjoined absent convincing proof of fraud, gross wrong or oppression. Where the Illinois action is filed first, however, these cases hold that a lesser standard applies, and the subsequent out-of-State action will be enjoined if it appears to be oppressive, vexatious, annoying, or harassing, or if it unduly interferes with the progress of a prior instituted local action. *Lowe v. Norfolk & Western Ry. Co.* (1981), 96 Ill. App. 3d 637, 643-44, 421 N.E.2d 971; *Block & Co. v. Storm Printing Co.* (1976), 40 Ill. App. 3d 92, 95, 351 N.E.2d 271; see also *National Hockey League v. Intermart, Inc.* (1984), 127 Ill. App. 3d 1072, 1077, 470 N.E.2d 1.

The substantive difference between the two standards suggested by this line of cases, each of which is couched in general equitable terminology, is not apparent on its face. However, *Lowe v. Norfolk & Western Ry. Co.* (1981), 96 Ill. App. 3d 637, 421 N.E.2d 971, states that, where a complete remedy may be obtained in an action first

filed in Illinois, the subsequent institution of foreign proceedings will be regarded as vexatious and harassing of the opposing party. (*Lowe,* 96 Ill. App. 3d at 645, 421 N.E.2d at 977; see also *National Hockey League,* 127 Ill. App. 3d at 1078, 470 N.E.2d at 5; *Wells v. Wells* (1976), 36 Ill. App. 3d 91, 93, 343 N.E.2d 215; *Catherwood v. Hokanson* (1916), 201 Ill. App. 462, 466.) Thus, under this rationale, the pendency of the Illinois action on the same issues involving the same parties would be sufficient to support an injunction against the foreign proceedings. This directly contradicts the statement in *Prentiss* that neither the inconvenience of defending a suit in another jurisdiction nor the added expense of double litigation is cause for an injunction against the out-of-State proceeding. *Prentiss,* 277 Ill. at 388, 115 N.E. at 556-57.

More fundamentally, a careful reading of *James* simply does not reveal a dual standard of analysis which would apply a lesser standard for issuance of an injunction where the Illinois action is filed first. In *Kavanagh* and *Prentiss,* two cases upon which *James* relied, the out-of-State action was not enjoined even though the Illinois action was, in fact, filed first. None of these three supreme court cases holds that a dual standard of analysis is to be utilized. Other appellate court cases appear to apply a unitary standard such as that in *Kavanagh,* although these cases do not acknowledge any disagreement with cases such as *Lowe.* See *American Re-Insurance Co. v. MGIC Investment Corp.* (1979), 73 Ill. App. 3d 316, 322-23, 391 N.E.2d 532, 537 (pendency of Illinois action is not sufficient reason to enjoin foreign action; each action may proceed without reference to the other); *Chicago & Eastern R.R. Co. v. Reserve Insurance Co.* (1978), 59 Ill. App. 3d 206, 209-10, 376 N.E.2d 1; *Tabor & Co. v. McNall* (1975), 30 Ill. App. 3d 593, 595-96, 333 N.E.2d 562.

We conclude that the appellate court decisions in *Lowe, Block,* and *Wells* incorrectly interpret the supreme court's decision in *James.* The issue in *James* was not, as here, whether an Illinois court should enjoin a party before it from proceeding with duplicative litigation in another State. Instead, *James* dealt with the fundamentally different question of whether Illinois should issue a *counter*injunction to prevent another State from effectively destroying Illinois' jurisdiction over a pending matter. Thus, an injunction was allowed in *James* only because the failure to do so would have prevented the Illinois court from hearing the case before it. The court in *James* emphasized that it "need not, and will not, countenance having its right to try cases *** determined by the courts of other States, *through their injunctive process.*" (Emphasis added.) *James,* 14 Ill. 2d at 372, 152 N.E.2d at 867.

*James* is not factually applicable here because the Michigan court has not attempted to enjoin any litigant from proceeding with the Illinois action. Here, as well as in *American Re-Insurance, Chicago & Eastern R.R.*, and *Tabor & Co.*, the other State does not threaten to frustrate Illinois' jurisdiction, but merely to duplicate it. *Lowe* is also not directly on point, because in that case the foreign State issued a temporary restraining order against the Illinois plaintiffs. (*Lowe*, 96 Ill. App. 3d at 638, 421 N.E.2d at 973.) *James* did not disavow the holding in *Prentiss* that neither the inconvenience nor expense of duplicative litigation is sufficient cause to enjoin the foreign action. (*Prentiss*, 277 Ill. at 388, 115 N.E. at 556-57.) *Prentiss* specifically held that a party may "press his action in any jurisdiction which he may see fit *and in as many of them as he chooses.*" (Emphasis added.) (*Prentiss*, 277 Ill. at 387, 115 N.E. at 556.) A supreme court decision issued after *James* also applies the same unitary standard utilized in *Prentiss*. See *Crawley v. Bauchens* (1974), 57 Ill. 2d 360, 312 N.E.2d 236 (supreme court refused to enjoin foreign adoption proceedings despite Illinois' continuing jurisdiction over custody matters).

We now turn to the question of whether, under the standard outlined above, Chrysler should have been enjoined from proceeding with its Michigan action. Such an injunction would be proper only if a clear equity is presented requiring the interposition of the court to prevent a manifest wrong and injustice (*James*, 14 Ill. 2d at 363, 152 N.E.2d at 862) or, in other words, if the foreign suit will result in a fraud, gross wrong, or oppression (*Prentiss*, 277 Ill. at 387, 115 N.E. at 556; *Kavanagh*, 233 Ill. at 183, 84 N.E. at 181-82).

The supreme court's decision in *Prentiss* presents a case almost directly on point with the question presented here: whether a party who files an action in Illinois should be enjoined from subsequently proceeding with a virtually identical action in another State during the pendency of the Illinois action. One difference between the instant case and *Prentiss* is that the action involved here is a third-party action, but that distinction is of little importance. The court in *Prentiss* held that, absent equitable considerations, the party filing the Illinois action should not be enjoined from subsequently filing an identical action in another State. *Prentiss*, 277 Ill. at 388-93, 115 N.E. at 557-58.

Most of what could conceivably be viewed as "equitable considerations" in this case were rejected in *Prentiss* as being insufficient to justify the issuance of an injunction. (*Prentiss*, 277 Ill. at 388, 115 N.E. at 556-57 (inconvenience of defending suit in a foreign State, double litigation and added expense are insufficient reasons to enjoin

a litigant from proceeding in another State).) The only factor present here which was not present in *Prentiss* is the fact that Chrysler did not bring its Michigan action until it had received an unfavorable ruling from the Illinois court. This factor is of dubious importance, however, since *Prentiss* specifically allows a party to proceed in "as many [jurisdictions] as he chooses." (*Prentiss*, 277 Ill. at 387, 115 N.E. at 556.) The court in *Prentiss* did not express any reservation about the fact that concurrent proceedings could presumably produce different rulings on the issues presented.

Furthermore, it is established that the likelihood of a different or more favorable remedy being obtained in the foreign jurisdiction is not cause for issuance of an injunction. (*James*, 14 Ill. 2d at 363, 152 N.E.2d at 862; *Kavanagh*, 233 Ill. at 183, 84 N.E. at 180-81.) We agree with Chrysler that there is no practical difference between filing an action in another jurisdiction in anticipation of receiving a more favorable ruling there and doing so after actually receiving a less favorable ruling in the Illinois proceeding.

This case being, in all essential elements, on point with *Prentiss*, we hold that the trial court erroneously enjoined Chrysler from proceeding with its contractual indemnity action in Michigan even though the circuit court of Boone county has held that such an action will not lie in Illinois.

We note that, even though our decision effectively allows the two actions to proceed in both jurisdictions concurrently, the parties will not face the possibility of conflicting judgments on the same cause of action. The full faith and credit clause of the United States Constitution (U.S. Const. art. IV, §1) generally requires every State to give a foreign judgment at least the *res judicata* effect which the judgment would be accorded in the State which rendered it. (*Durfee v. Duke* (1963), 375 U.S. 106, 109, 11 L. Ed. 2d 186, 190, 84 S. Ct. 242, 244.) Thus, the proceedings which first reach a final judgment may well control, under *res judicata*, the ultimate vitality of Chrysler's indemnity claims.

Skyline also argues that Chrysler's attempt to bring the indemnity action in Michigan rather than as part of the Illinois proceedings violates Illinois' policy in favor of determining common issues in the same proceedings. Skyline refers us to the Illinois Supreme Court's holding in *Laue v. Leifheit* (1984), 105 Ill. 2d 191, 473 N.E.2d 939, that contribution actions must be brought as part of the proceedings in the underlying tort action. Skyline argues that an analogous rationale applies to indemnity actions. However, this position is internally inconsistent, as it would have the court conclude that Illinois

public policy requires indemnity actions to be brought as part of the underlying tort action even though indemnity actions are themselves generally against Illinois public policy. We reject this contention.

We conclude that the circuit court erred in enjoining Chrysler from proceeding with its Michigan action. We therefore reverse the order of injunction.

Reversed.

DUNN and BOWMAN, JJ., concur.